1   Brian E. Pastuszenski (*pro hac vice*)
    bpastuszenski@goodwinprocter.com
2   Inez H. Friedman-Boyce (*pro hac vice*)
    ifriedmanboyce@goodwinprocter.com
3   Brian C. Devine (SBN# 222240)
    bdevine@goodwinprocter.com
4   **GOODWIN PROCTER LLP**
    53 State Street
5   Boston, MA 02109
    Tel.: 617-570-1000
6   Fax: 617-523-1231

7   Lloyd Winawer (SBN# 157823)
    lwinawer@goodwinprocter.com
8   **GOODWIN PROCTER LLP**
    601 S Figueroa St., 41st Floor
9   Los Angeles, California  90017
    Tel.:  213.426.2500
10  Fax:  213.623.1673

11  *Attorneys for Defendants:*
    Countrywide Financial Corp., Countrywide
12  Securities Corp., Countrywide Capital Markets, LLC,
    Countrywide Home Loans, Inc., Countrywide Home
13  Loans Servicing LP, CWMBS, Inc., CWALT, Inc.,
    CWABS, Inc., and CWHEQ, Inc.

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16                      **WESTERN DIVISION**

| | |
|---|---|
| 17  IN re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION CASES | Case No.  11-ML-02265-MRP (MANx) **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE COUNTRYWIDE DEFENDANTS' AMENDED MOTION TO STRIKE AND TO DISMISS** |

Date:        January 26, 2012
Time:        1:00 p.m.
Courtroom: 12
Judge:      Hon. Mariana R. Pfaelzer

23  THRIVENT FINANCIAL FOR
    LUTHERANS, *et al.*,

24          *Plaintiffs*,

25      v.                                  Case No. 11-07154-MRP-MAN

26  COUNTRYWIDE FINANCIAL
    CORPORATION, *et al.*,

27          Defendants.

28

Pursuant to the Stipulation Regarding Schedule for Motions to Dismiss Pending Cases (Dkt. No. 138), the Countrywide Defendants respectfully submit this supplemental memorandum in support of their Amended Motion to Strike and to Dismiss (the "Motion to Dismiss"), which was filed on August 2, 2011.  The Motion to Dismiss sought that the Complaint ("Compl.") be dismissed or portions of it be stricken on the grounds (1) that the Complaint parrots allegations and pleadings from other lawsuits; (2) that the Complaint fails to allege any actionable misrepresentations with the particularity required by Rule 9(b); (3) that Plaintiffs' negligent misrepresentation claim fails because no duty existed between plaintiffs and the Countrywide Defendants; (4) that the Complaint fails to plead cognizable economic loss; and (5) that Plaintiffs' conclusory aiding and abetting claims fail.  In addition to these grounds, the Countrywide Defendants respectfully submit that the Complaint should be dismissed for the separate and independent reason that it does not plead facts sufficient to establish either loss causation or justifiable reliance, both of which are essential elements of Plaintiffs' claims.

# I. PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO SHOW LOSS CAUSATION.

In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005), the Supreme Court held that a plaintiff suing under federal securities law must allege facts to establish "loss causation"—that is, a causal link between the alleged misrepresentation and the decline in the price of the security.  A mere decline in price is insufficient to establish loss causation, because "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Id.* at 343.  Likewise, Minnesota courts have specifically held that Minnesota state law claims for fraud and negligent misrepresentation, in the securities context, require that loss causation be both pleaded and proved in the

1

1  same manner required for federal securities claims under *Dura*. *See, e.g., Hoyt*

2  *Properties, Inc. v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007)

3  (fraudulent misrepresentation); *Hebrink v. Farm Bureau Life Ins. Co.*, 664 N.W.2d

4  414, 420 (Minn. Ct. App. 2003) (negligent misrepresentation).[1] As the Eighth

5  Circuit has held under Minnesota law, "[l]oss causation . . . corresponds to the

6  common law's requirement of proximate causation." *Schaaf v. Residential Funding*

7  *Corp.*, 517 F.3d 544, 548, 550 (8th Cir. 2008) (also holding that the loss causation

8  standard "does not differ from that employed in a common law fraud case").[2]

9      For example, in *Schaaf v. Residential Funding Corp.*, 2006 WL 2506974 (D.

10 Minn. Aug. 29, 2006), *aff'd*, 517 F.3d 544 (8th Cir. 2008), the plaintiff asserted a

11 common law fraud claim under Minnesota law arising from its purchase of certain

12 debentures, which the court dismissed for failure to plead loss causation adequately.

13 The district court in *Schaaf* explained that the fifth element of such a claim requires

14 proof "that the party suffer[ed] pecuniary damage as a result of [its] reliance" on the

15 misrepresentation, and that Minnesota "'[c]ourts often label the fifth element "loss

16 causation" in the context of investments.'" *Id*. at *14 (quoting *Spiegel v. Besikof*,

17 1995 WL 697559, at *3 (Minn. Ct. App. Nov. 28, 1995)).  In other words, "the

18 aggrieved party must show not only detrimental reliance on the false representation

19 or omission, but also that the false representation or omission caused the economic

20 harm—loss causation." *Id.* (citing *Zacharias v. Polinsky*, 2003 WL 21694591, at *1

21 (Minn. Ct. App. July 22, 2003)).  The district court in *Schaaf* also held that it "d[id]

22 not find persuasive Plaintiffs' argument that *Dura*'s analysis of loss causation

23

24 [1] Minnesota courts have also treated the elements of fraudulent inducement as
   interchangeable with those of fraudulent misrepresentation.  *See* Countrywide

25 Defendants' Mem. at 10 n.7 (Doc. 77); *accord Johnston v. Hjelmen*, 2005 WL
   14941, at *2 (Minn. Ct. App. Jan. 4, 2005).

26 [2] *See also Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172-73 (2d Cir. 2005)
   (comparing loss causation to "the tort-law concept of proximate cause"); *Bastian v.*

27 *Petren Res. Corp.*, 892 F.2d 680, 683, 685 (7th Cir. 1990) (explaining that the loss
   causation requirement for federal securities claims derives from "the common law's

28 universal requirement that the tort plaintiff prove causation").

1   should be less stringently applied when considering Plaintiffs' state law claims." *Id*.

2   And the district court's ruling in *Schaaf* was affirmed on appeal, with the Eighth

3   Circuit agreeing that "to recover for securities fraud at common law . . . , the

4   plaintiff must show . . . that the loss was caused by the materialization of the

5   concealed risk." 517 F.3d at 550 (citation and bracketing omitted). *Accord*

6   *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 537 (Minn. 1986) ("'[I]f false

7   statements are made in connection with the sale of corporate stock, losses due to a

8   subsequent decline in the market or other factors in no way related to the

9   representations will not afford any basis for recovery.'") (quoting W. Keeton, et al.,

10  *Prosser & Keeton on the Law of Torts* § 110, at 767 (5th ed. 1984)).

11      Plaintiffs' Complaint fails to allege facts sufficient to establish loss causation

12  for three separate reasons. First, the Complaint fails to plead any pecuniary loss at

13  all, much less one caused by the claimed misstatements. Instead, it pleads only that

14  the securities are "no longer marketable at or near the prices Plaintiffs paid for

15  them." Countrywide Defendants' Mem. at 32-34. Absent cognizable loss, there can

16  be no loss causation. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs

17  & Co.*, 743 F. Supp. 2d 288, 290-92 (S.D.N.Y. 2010) (dismissing § 11 claims for

18  failure to plead legally cognizable injury where "[t]he complaint does not allege that

19  NECA has failed to receive any monthly distributions due under the Certificates");

20  *Luminent Mortg. Capital Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 590-92

21  (E.D. Pa. 2009) (dismissing § 10(b) claims for "failure to allege an economic loss"

22  where there was "no dispute that Plaintiffs received the payments due under the

23  Junior Certificates" that they purchased).[3]

24      Second, the Complaint does not identify even one "corrective disclosure" that

25  _____

26  [3] A naked assertion of non-marketability, unsupported by any factual allegations of
    actual "pecuniary loss," *Smith v. Brutger Cos.*, 569 N.W.2d 408 (Minn. 1997), is too

27  conclusory to plead loss causation under Minnesota law and the particularity

28  required by Federal Rule 9(b). *See* Countrywide Defendants' Mem. at 32-34.

revealed the supposed "truth" about the alleged misstatements and caused the price of the securities to decline. Minnesota courts addressing motions to dismiss Minnesota state law fraud and negligent misrepresentation claims have held that "[u]nder *Dura*, a plaintiff must allege a corrective disclosure followed by a drop in the stock price during the time plaintiffs owned the securities." *In re St. Paul Travelers Sec. Litig. II*, 2007 U.S. Dist. LEXIS 40326, at *6 (D. Minn. Jun. 1, 2007) (citations omitted). The Ninth Circuit likewise has held that, under *Dura*, "the complaint must allege that the defendant's [security] price fell significantly after the truth became known." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (citations omitted); *accord Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, --- F. Supp. 2d ---, 2011 WL 2504637, *3-4 (C.D. Cal. June 21, 2011) (holding that "Plaintiffs must plead that the value of their investment fell significantly after the truth became known about the Defendants' acts or practices" and finding that the complaint in that case had identified specific alleged corrective disclosures). Because the Complaint here fails to allege *any* corrective disclosures whereby defendants' supposed misrepresentations were revealed to the market, the Complaint fails to allege facts sufficient to establish loss causation.[4]

Finally, the Complaint fails to plead loss causation because, although it vaguely suggests the prices of the securities have declined over the many years since the securities were purchased (Compl. ¶ 10), the Complaint does not allege any facts showing that those price declines occurred promptly following any supposed disclosures of the alleged misrepresentations. For just this reason, the Eighth Circuit Court of Appeals in *McAdams v. McCord*, 584 F.3d 1111, 1115 (8th Cir. 2009),

---

[4] To the extent that Plaintiffs rely on allegations or statements from other legal proceedings as purported corrective disclosures or evidence of falsity, those allegations should be stricken for the reasons addressed in the Motion to Dismiss. *See* Countrywide Defendants' Mem. at 6-9.

1   sustained the dismissal of plaintiffs' state law fraud claims, noting that plaintiffs had

2   failed to allege the value of the security "right before, or right after" the alleged

3   corrective disclosures.

4        Here, Plaintiffs' failure to plead facts supporting an inference of loss

5   causation is compounded by the contrary inference this Court may draw—based on

6   judicially-noticeable facts—that the global financial crisis that started in 2007

7   caused the alleged decline in the value of Plaintiffs' securities.  Numerous courts

8   have taken judicial notice that the financial crisis caused the mortgage industry to

9   collapse, housing prices to plummet, and capital markets to freeze.  *See, e.g.,*

10  *Luminent*, 652 F. Supp. 2d at 593-94 (describing the "deterioration in the housing

11  and mortgage industry that began in 2007").[5]  Indeed, this Court recently noted that

12  this was "a very chaotic period of time in the market and in the economy," and "no

13  one can contest what that period of time was like."  *See* Transcript of Hearing at

14  56:11-57:23, 66:5-18, *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-05295

15  (Feb. 25, 2011) (Countrywide Defendants' Request for Judicial Notice in Support of

16  Supplemental Memorandum In Support Of The Countrywide Defendants' Amended

17  Motion To Strike And To Dismiss ("RJN"), at Ex. 1).  And Plaintiff Thrivent

18  Financial for Lutherans itself has publicly acknowledged the "historical market

19  events" that took place in September and October 2008, and that "[t]he market

20  turmoil of 2008 and early 2009 have created a significant amount of strain on many

21  companies in the financial services industry."  RJN Ex. 2 (Press Release, Thrivent

22  Financial for Lutherans, Thrivent Financial Highlights Strength and Community

23  Outreach at Report to the Community (June 2, 2009); RJN Ex. 3 (Thrivent Financial

24  2008 Statutory Annual Statement), at Introduction.[6]

25  _____

    [5] Courts routinely take judicial notice of downturns in particularly industries or the
26  economy.  *See, e.g., Bastian*, 892 F.2d at 685 (decline in oil and gas industry); *In re
    Northpoint Commc'ns Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1004 (N.D. Cal.
27  2001) (decline of Internet industry in late 2000).

28  [6] *See also* RJN Ex. 4 (Randy Myers, *One Year Later*, THRIVENT MAGAZINE (Fall
    2009), *available at* https://www.thrivent.com/magazine/fall09/moneymatters.html)

Given the weakness of the loss causation allegations in the Complaint, these judicially-noticeable facts regarding the global financial crisis undercut any causal connection between the allegations of misstatements in the Complaint and the decline in the value of Plaintiffs' MBS.  In *Luminent*, for example, the court dismissed the plaintiffs' claims for failure to plead loss causation, explaining that "the market downturn in the mortgage industry that developed in early- to mid-2007[] is sufficient to undermine the inference of a nexus between Defendants' misrepresentations and the performance of the [plaintiff's securities]."  652 F. Supp. 2d at 593.  And the Supreme Court itself in *Dura* likewise noted that the causal link can be broken where, as here, there are "economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price."  *Dura*, 544 U.S. at 343.  The Supreme Court of Minnesota likewise has noted that the causal link can be broken as to Minnesota state law fraud claims where losses are "due to a subsequent decline in the market or other factors in no way related to the representations."  *Specialized Tours,* 392 N.W.2d at 537 (quoting W. Keeton, et al., *Prosser & Keeton on the Law of Torts* § 110, at 767 (5th ed. 1984)).  That link has been broken here.

The deficiency in Plaintiffs' loss causation allegations is underscored by the long period of time between Plaintiffs' alleged purchase of the securities (starting in February 2005) and the date as of which the Plaintiffs complain of price declines (April 2011, the date the complaint was filed).  In *Schaaf*, for example, the plaintiff purchased certain debentures in November and December of 1997 and the company filed for bankruptcy in March 2000, just over two years later.  Applying Minnesota state law, the court dismissed the plaintiffs' claim for lack of loss causation,

---

(the financial "markets seized" in 2008; "[o]ne year after the world's financial markets nearly ground to a halt and sent the already troubled global economy into a tailspin . . ."; "it was what had become 'business as usual' over the past decade or so –easy credit, overspending and some would argue, inadequate government regulation of the financial markets–that got us into this mess in the first place").

1  holding:

2  > In light of the length of time between the alleged misrepresentations and

3  > given the lack of factual allegations linking Plaintiffs' loss and Defendants'

4  > lender certificate representations and the likelihood of intervening factors

5  > which contributed to the loss, the Court finds that Plaintiffs do not state

6  > claims upon which relief may be granted.

7  *Schaaf*, 2006 WL 2506974 at *15; *accord Dura*, 544 U.S. at 343 ("[T]he longer the

8  time between purchase and sale, the more likely that ... other factors caused the

9  loss.").

10  Here, as many as six years passed between Plaintiffs' alleged purchase of the

11  securities and the filing of the Complaint, when Plaintiffs allege the securities were

12  not "marketable at the prices paid for them by Plaintiffs."  Compl. ¶ 248.  Given the

13  turmoil in the financial markets and the illiquidity in the secondary mortgage market

14  on which MBS are sold that occurred during this long six-year period, Plaintiffs'

15  vague pleading fails to allege facts that support an inference of loss causation and

16  fails to overcome the contrary inference arising from the market turmoil that began

17  in the third quarter of 2007.  Plaintiffs' claims should be dismissed for this reason,

18  in addition to those identified in its Motion to Dismiss.

19  **II.    THE COMPLAINT DOES NOT ALLEGE FACTS SUFFICIENT TO SHOW ACTUAL RELIANCE.**

20

21  The Complaint must be dismissed also because it does not plead facts

22  sufficient to show that Plaintiffs actually relied on Countrywide's alleged

23  misrepresentations when they allegedly purchased the MBS at issue.  Reliance is a

24  "crucial element" of common law fraud and misrepresentation claims under

25  Minnesota law.  *City of Maple Grove v. Marketline Constr. Capital, LLC*, 802

26  N.W.2d 809, 817 (Minn. Ct. App. 2011).  "Unlike a claim under Section 10(b),

27  [Minnesota state law] misrepresentation claims cannot be premised on a

28  presumption of reliance under the 'fraud-on-the-market' theory."  *In re Digi Int'l,*

*Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1104 (D. Minn. 1998).  Instead, Minnesota state law claims "require actual reliance," that is, the plaintiff "must plead and then prove that it actually relied" on the alleged misrepresentations.  *Id.*; *see also Schaaf*, 2006 WL 2506974, at *17 (granting motion to dismiss because "common law fraud …. require[s] *actual* reliance") (emphasis in original).

Because all of Plaintiffs' claims in this case are fraud-based, moreover, reliance must be pled *with particularity* under Federal Rule 9(b).  *See Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, No. 10-CV-05699, slip op., at *15 (C.D. Cal. Jan. 20, 2011) ("Rule 9(b) requires that fraud be pleaded with particularity.") (RJN Ex. 5); *Digi*, 6 F. Supp. 2d at 1095 ("The pleading standards set forth in Rule 9(b) apply to all fraud and misrepresentation claims, including [plaintiff's] common-law causes of action" for fraud and negligent misrepresentation.); *Trooien v. Mansour*, 2007 WL 436068, *3 (D. Minn. Feb. 7, 2007) ("The [Rule 9(b)] particularity requirements similarly apply to negligent misrepresentation claims.").  The Complaint here fails to do so.

More specifically, the Complaint fails to plead facts sufficient to show reliance for two separate and independent reasons.  First, federal courts addressing Minnesota state law claims have held that, to plead reliance with the requisite particularity under Rule 9(b), a plaintiff alleging multiple instances of fraudulent conduct must plead specific facts showing its reliance on *each* allegedly fraudulent statement or omission.  *See ADT Sec. Services, Inc. v. Swenson*, 2008 WL 2828867, *4 (D. Minn. 2008) (holding that plaintiffs "must support each distinct reliance claim with specific allegations concerning [their] receipt of [a] misrepresentation" and dismissing counterclaims for do so); *see also Lagermeier v. Boston Scientific Corp.*, 2011 WL 4549175, *6 (D. Minn. Sept. 29, 2011) (observing that "Plaintiff must tie Defendants' specific statements to Plaintiffs' specific actions in reliance thereon").  The Complaint here fails to do so.

Plaintiffs allege that they purchased securities at various times from 2005

1  through 2007 (Complaint ¶ 3 and Exs. 1, 4), but they do not identify on *which*

2  supposed misrepresentations they relied in making each – *or even any* – purchase.

3  Instead, the Complaint contains an undifferentiated mass of alleged

4  misrepresentations (¶¶ 203-25) and then generically asserts that Plaintiffs relied on

5  those undifferentiated alleged misrepresentations when they made purchases (¶¶

6  193-201).  By contrast, in *Centaur Classic Convertible Arbitrage Fund Ltd.*, --- F.

7  Supp. 2d ---, 2011 WL 2504637 at *4 (C.D. Cal. June 21, 2011), this Court held that

8  another complaint satisfied Rule 9(b) because the plaintiffs there "ha[d] set forth in

9  the SAC which statements they relied on for *each purchase*."  (emphasis added).

10  And this Court had dismissed the predecessor complaint in *Centaur* in part because

11  of its failure to do so.  *Centaur Classic Convertible Arbitrage Fund Ltd.*, No. 10-

12  CV-05699, slip op., at *15 (RJN Ex. 5).  Given that Plaintiffs here too have failed to

13  do so, they have not pled reliance with the requisite particularity.

14      Plaintiffs' allegations are also insufficient to show reliance because they

15  repeatedly assert that Plaintiffs relied on statements or information provided to them

16  "by Countrywide Securities, Residential Funding Securities, or other brokers."

17  Compl. ¶¶ 196-98.  To the extent that Plaintiffs relied on information provided by

18  Residential Funding Securities (a subsidiary of General Motors Corporation, *see*

19  Compl. ¶ 33), or by unspecified "other brokers," they did not rely on representations

20  made by Countrywide.  But neither Defendants nor this Court has any way of

21  knowing what information Plaintiffs claim to have received from which alleged

22  source.  As such, the Complaint fails to allege, with particularity, the supposed

23  misrepresentations *by Countrywide* on which each of the Plaintiffs allegedly relied

24  when they allegedly purchased the securities in question.  *See, e.g., Lagermeier v.*

25  *Boston Scientific Corp.*, 2011 WL 2912642 at *5 (D. Minn. July 19, 2011), *amended*

26  *by* 2011 WL 4549175 (D. Minn. Sept. 29, 2011) ("Rule 9(b) 'does not allow a

27  complaint to merely lump multiple defendants together but require[s] plaintiffs to

28  differentiate their allegations when suing more than one defendant ... and inform

1  each defendant separately of the allegations surrounding his alleged participation in

2  the fraud.'"); *Block v. Toyota Motor Corp.*, 2010 WL 5422555, *5 (D. Minn. Dec.

3  23, 2010) ("Particularity requires that the identity of the person committing fraud be

4  pled."); *Daher v. G.D. Searle & Co.* 695 F. Supp. 436, 440 (D. Minn. 1988)

5  ("[W]here plaintiff has brought fraud claims against more than one defendant, each

6  defendant is entitled to know the particular allegations of fraud it allegedly

7  committed.  Common circumstances do not excuse a plaintiff from identifying

8  which party allegedly perpetrated which specific acts of fraud.").  And, because this

9  case is not a putative class action, that reliance must be pled not only as to each

10  claimed misstatement, but *as to each plaintiff individually* as well.  *Centaur Classic*

11  *Convertible Arbitrage Fund Ltd.*, No. 10-CV-05699, slip op., at *15 ("Each Plaintiff

12  must identify its transactions, the misrepresentations it relied upon when engaging in

13  the transactions, and the damages it alleges it suffered as a result.") (RJN Ex. 5).

14  For these reasons, the Complaint should be dismissed.

15                                    **<u>CONCLUSION</u>**

16           For the reasons stated herein, as well as the reasons set forth in the

17  Countrywide Defendants' initial memorandum in support of their Motion to

18  Dismiss, any allegations in the Complaint parroted from other lawsuits should be

19  stricken, and the Complaint should be dismissed in its entirety.

20  Dated:  November 4, 2011          **GOODWIN PROCTER LLP**

21                                    /s/ Brian E. Pastuszenski
                                      Brian E. Pastuszenski (*pro hac vice*)
22                                    Lloyd Winawer (State Bar No. 157823)
                                      Inez H. Friedman-Boyce (*pro hac vice*)
23                                    Brian C. Devine (State Bar No. 222240)

24                                    *Counsel for the Countrywide Defendants*

25

26

27

28

COUNTRYWIDE DEFENDANTS' SUPP. MEM. IN SUPPORT OF AMENDED MOTION TO STRIKE AND TO DISMISS
CASE NO. 11-CV-07154-MRP

1

## **PROOF OF SERVICE**

2

     I, Gareth Oania, declare:

3

     I am employed in County of Los Angeles, State of California.  I am over the

4

age of 18 and not a party to the within action.  My business address is 601 S.

5

Figueroa St., 41st Floor, Los Angeles, CA 90017.

6

7

     On **November 4, 2011**, I served the following document by placing a true

8

copy thereof in a sealed envelope(s) on the persons listed on the service list:

9

**COUNTRYWIDE DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF AMENDED MOTION TO STRIKE AND TO DISMISS**

10

☐    (MAIL) I placed the envelope for collection and mailing, following our
11       ordinary business practices.  I am readily familiar with this firm's practice
       for collecting and processing correspondence for mailing.  On the same day
12       that correspondence is placed for collection and mailing, it is deposited in
       the ordinary course of business with the United States Postal Service, in a
13       sealed envelope with postage fully prepaid.  I am a resident or employed in
       the county where the mailing occurred.  The envelope or package was
14       placed in the mail at Los Angeles, California.

15

☐    (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly
16       maintained by Federal Express , an express service carrier, or delivered to a
       courier or driver authorized by said express service carrier to receive
17       documents, a true copy  of the foregoing document in sealed envelopes or
       packages designated by the express service carrier, addressed as stated
       above, with fees for overnight delivery paid or provided for.

18

☐    (MESSENGER SERVICE) I served the documents by placing them in an
19       envelope or package addressed to the persons at the addresses listed and
       provided them to a professional messenger service for service.  A separate
20       Personal Proof of Service provided by the professional messenger service
       will be filed under separate cover.

21

☐    (FACSIMILE) Based on an agreement of the parties to accept service by
22       fax transmission, I faxed the documents to the persons at the fax numbers
       listed. No error was reported by the fax machine that I used. A copy of the
23       record of the fax transmission, which I printed out, is attached.

24

☐    (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or
       an agreement of the parties to accept service by e-mail or electronic
25       transmission, I caused the documents to be sent to the persons at the e-mail
       addresses listed. I did not receive, within a reasonable time after the
26       transmission, any electronic message or other indication that the
       transmission was unsuccessful.

27

28

1    ☑    (CM/ECF Electronic Filing) I caused the above document(s) to be
transmitted to the office(s) of the addressee(s) listed above by electronic
2    mail at the e-mail address(es) set forth above pursuant to
Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated
3    automatically by the ECF system upon completion of an electronic filing.
The NEF, when e-mailed to the e-mail address of record in the case, shall
4    constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of
the NEF shall be attached to any document served in the traditional manner
5    upon any party appearing pro se."

6      I declare under penalty of perjury that I am employed in the office of a
member of the bar of this Court at whose direction this service was made and that
7    the foregoing is true and correct.

8      Executed on **November 4, 2011**, at Los Angeles, California.

9

10    _____    _____
     Gareth Oania
11      (Type or print name)                         (Signature)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SERVICE LIST

| | |
|---|---|
| Blair A. Nicholas<br>Timothy A. DeLange<br>**Bernstein Litowitz Berger &**<br>**Grossmann LLP**<br>12481 High Bluff Drive<br>Suite 300<br>San Diego, CA 92130<br>Telephone: 858-793-0070<br>Facsimile: 858-793-0323<br>blairn@blbglaw.com<br>timothyd@blbglaw.com<br><br>Bruce D. Bernstein<br>David L. Wales<br>Gerald H. Silk<br>Jai K. Chandrasekhar<br>Lauren A. McMillen<br>**Bernstein Litowitz Berger &**<br>**Grossmann LLP**<br>1285 Avenue of the Americas<br>38th Floor<br>New York, NY 10019<br>Telephone: 212554-1400<br>Facsimile: 212-554-1444<br>bruce@blbglaw.com<br>dwales@blbglaw.com<br>jerry@blbglaw.com<br>jai@blbglaw.com<br>Lauren@blbglaw.com<br><br>Brian F. Rice<br>Karin E. Peterson<br>**Rice Michels & Walther LLP**<br>10 Second St., NE<br>Suite 206<br>Minneapolis, MN 55413<br>Telephone: 612-676-2300<br>Facsimile: 612-676-2319 | *Attorneys for Plaintiffs*<br>Thrivent Financial For Lutherans;<br>Thrivent Life Insurance Company;<br>Thrivent Balanced Fund;<br>Thrivent Core Bond Fund;<br>Thrivent Income Fund;<br>Thrivent Limited Maturity Bond Fund;<br>Thrivent Balanced Portfolio;<br>Thrivent Bond Index Portfolio;<br>Thrivent Limited Maturity Bond<br>Portfolio;<br>Thrivent Financial Defined Benefits<br>Plan Trust;<br>Thrivent Financial For Lutherans<br>Foundation |
| Matthew W. Close<br>**O'Melveny and Myers LLP**<br>400 South Hope Street, 18th Floor<br>Los Angeles, CA 90071<br>Telephone: 212-430-6000<br>Facsimile: 213-430-6407<br>mclose@omm.com<br><br>Bradley J. Butwin<br>William J. Sushon<br>Jonathan Rosenberg<br>**O'Melveny & Myers**<br>7 Times Square<br>New York, NY 10036<br>Telephone: 212-326-2000 | *Attorneys for Defendant*<br>Bank of America Corp.;<br>BAC Home Loans Servicing, L.P.;<br>NB Holdings Corporation |

| | | |
|---|---|---|
| 1 | Facsimile:  212-326-2061<br>bbutwin@omm.com | |
| 2 | wsushon@omm.com<br>jrosenberg@omm.com | |
| 3 | | |
| | David L. Hashmall | |
| 4 | **Hinshaw & Culbertson** | |
| | 3100 Piper Jaffray Tower | |
| 5 | 222 South 9th Street | |
| | Minneapolis, MN  55402 | |
| 6 | Telephone:  612-333-3434 | |
| 7 | A. Matthew Ashley | *Attorneys for Defendant* |
| | Allison L. Libeu | Angelo Mozilo |
| 8 | **Irell & Manella LLP** | |
| | 840 Newport Center Drive | |
| 9 | Suite 400 | |
| | Newport Beach, CA  92660 | |
| 10 | Telephone: 949-760-0991 | |
| | Facsimile:  949-760-5200 | |
| 11 | mashley@irell.com | |
| | alibeu@irell.com | |
| 12 | | |
| | David Siegel | |
| 13 | Holly L. Gershow | |
| | **Irell & Manella LLP** | |
| 14 | 1800 Avenue of the Stars | |
| | Suite 900 | |
| 15 | Los Angeles, CA 90067 | |
| | Telephone:  310-277-1010 | |
| 16 | Facsimile:  310-203-7199 | |
| | dsiegel@irell.com | |
| 17 | hgershow@irell.com | |
| 18 | | |
| 19 | Andrew M. Luger | |
| | John W. Ursu | |
| 20 | Erin Sindberg Porter | |
| | **Greene Espel PLLP** | |
| 21 | 200 S. 6th Street | |
| | Suite 1200 | |
| 22 | Minneapolis, MN  55402 | |
| | Telephone:  612-373-0380 | |
| 23 | Facsimile:  612-373-0929 | |
| 24 | Frank M. Scaduto | *Attorneys for Defendant* |
| | Michael D. Torpey | David A. Sambol |
| 25 | **Orrick Herrington & Sutcliffe LLP** | |
| | The Orrick Building | |
| 26 | 405 Howard Street | |
| | San Francisco, CA 94105 | |
| 27 | Telephone: 415-773-5700 | |
| | Facsimile:  415-773-5759 | |
| 28 | fscaduto@orrick.com | |

1    mtorpey@orrick.com

2    Michael C. Tu
     **Orrick Herrington & Sutcliffe LLP**
3    777 South Figueroa Street
     Suite 3200
4    Los Angeles, CA  90017
     Telephone:  213-629-2020
5    Facsimile:  213-612-2499
     mtu@orrick.com
6
     Brooke D. Anthony
7    Courtland C. Merrill
     Vincent D. Louwagie
8    **Anthony Ostlund Baer & Louwagie PA**
     90 South 7th Street
9    Suite 3600
     Minneapolis, MN  55402
10   Telephone:  612-349-6969
     Facsimile:  612-349-6996

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28