MICHAEL C. TU (SBN 186793)
mtu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

MICHAEL D. TORPEY (SBN 79424)
mtorpey@orrick.com
FRANK M. SCADUTO (SBN 261451)
fscaduto@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

Attorneys for Defendant David Sambol

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THRIVENT FINANCIAL FOR LUTHERANS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al.,<br><br>Defendants. | Case No. 11-CV-7154 MRP (MANx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DAVID SAMBOL'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date: January 26, 2012<br>Time: 1:00 p.m.<br>Judge: Hon. Mariana R. Pfaelzer<br>Dept: 12 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING PERSONAL JURISDICTION OVER MR. SAMBOL .............................................................................................................. 2

    A. Plaintiffs Have Not Demonstrated That Mr. Sambol Had "Minimum Contacts" With Minnesota ........................................... 3

    B. Exercising Jurisdiction Over Mr. Sambol In Minnesota Would Offend "Fair Play and Substantial Justice" ............................... 9

III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. SAMBOL ..................................................................... 9

    A. The Negligent Misrepresentation Claim Fails ................................... 10

    B. The Aiding And Abetting Claim Fails .............................................. 11

IV. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Allstate Insurance Co. v. Countrywide Financial Corp.*,
2011 WL 5067128 (C.D. Cal. Oct. 21, 2011) ................................................*passim*

*Alsop v. Carolina Custom Prods., Inc.*,
2007 WL 2441025 (C.D. Cal. Jun. 29, 2007) ........................................................ 5

*Am. Ass'n for Justice v. Am. Trial Lawyers Ass'n, Inc.*,
2008 WL 2690290 (D. Minn. July 1, 2008) .......................................................... 5

*Bell Paper Box, Inc. v. U.S. Kids, Inc.*,
22 F.3d 816 (8th Cir. 1994) ................................................................................... 5

*Birts v. Vermillion*,
2009 WL 3126223 (W.D. Ark. Sept. 23, 2009) .................................................... 6

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) .............................................................................. 5

*Brown v. Gen. Steel Domestic Sales, LLC*,
2008 WL 2128057 (C.D. Cal. May 19, 2008) ................................................... 6, 8

*Calder v. Jones*,
465 U.S. 783 (1984) ........................................................................................... 4, 6

*Christopher v. Hanson*,
2011 WL 2183286 (D. Minn. June 6, 2011) ...................................................... 12

*Davis v. Metro Prods., Inc.*,
885 F.2d 515 (9th Cir. 1989) ................................................................................ 7

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) .............................................................................. 5

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) ................................................................ 8

*Finley v. River North Records, Inc.*,
148 F.3d 913 (8th Cir. 1998) ................................................................................ 7

*Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*,
2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ..................................................... 4

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) .............................................................................. 4

*In re TMJ Implants Prod. Liab. Litig.*,
113 F.3d 1484 (8th Cir. 1997) ............................................................................ 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*,
  747 F.2d 448 (8th Cir. 1984) ................................................................... 5

*Jennie-O Turkey Store, Inc. v. Food Movers Int'l, Inc.*,
  2007 WL 2580599 (D. Minn. Sept. 5, 2007) ....................................... 8

*Johnson v. Woodcock*,
  444 F.3d 953 (8th Cir. 2006) ................................................................. 4

*Karabu Corp. v. Gitner*,
  16 F. Supp. 2d 319 (S.D.N.Y. 1998) ..................................................... 7

*Minn. Pub. Radio v. Va. Beach Educ. Broad. Found.*,
  519 F. Supp. 2d 970 (D. Minn. 2007) ............................................. 2, 4

*Nelson v. R. Greenspan & Co., Inc.*,
  613 F. Supp. 342 (E.D. Mo. 1985) ....................................................... 5

*New Mexico State Inv. Council v. Countrywide Fin. Corp.*,
  No. D-0101-CV-2008-02289 (N.M. Dist. Ct. Apr. 14, 2009) ............ 3

*Parnes v. Gateway 2000, Inc.*,
  122 F.3d 539 (8th Cir. 1997) ............................................................... 10

*Pocahontas First Corp. v. Venture Planning Grp.*,
  572 F. Supp. 503 (D. Nev. 1983) ......................................................... 7

*Retail Software Servs., Inc. v. Lashlee*,
  854 F.2d 18 (2d Cir. 1988) .................................................................... 7

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................. 4

*Scott v. Breeland*,
  792 F.2d 925 (9th Cir. 1986) ................................................................. 2

*Steinbuch v. Cutler*,
  518 F.3d 580 (8th Cir. 2008) ............................................................. 4-5

*Summit Recovery, LLC v. Credit Card Reseller, LLC*,
  2010 WL 1427322 (D. Minn. Apr. 9, 2010) ...................................... 11

*The Toro Co. v. Advanced Sensor Tech.*,
  2008 WL 2564336 (D. Minn. June 25, 2008) ..................................... 5

*Toyz, Inc. v. Wireless Toyz, Inc.*,
  2010 WL 334475 (N.D. Cal. Jan. 25, 2010) ........................................ 6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tuttle v. Lorillard Tobacco Co.*,
  118 F. Supp. 2d 954 (D. Minn. 2000) ................................................................ 8

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ........................................................................................... 9

*Z-Rock Commc'ns Corp. v. William A. Exline, Inc.*,
  2004 WL 1771569 (N.D. Cal. Aug. 6, 2004) .................................................... 7

**STATE CASES**

*Chaikovska v. Ernst & Young, LLP*,
  913 N.Y.S.2d 449 (App. Div. 2010) .................................................................. 7

*Cornerstone Home Builders, Inc. v. Guyers Dev.*,
  2010 WL 1541344 (Minn. Ct. App. 2010) ...................................................... 11

*Ellwein v. Sun-Rise, Inc.*,
  295 Minn. 109 (1972) ........................................................................................ 5

*Vikse v. Flaby*,
  316 N.W.2d 276 (Sup. Ct. Minn. 1982) ............................................................ 7

*Witzman v. Lehrman, Lehrman & Flom*,
  601 N.W.2d 179 (Minn. 1999) ........................................................................ 12

**OTHER AUTHORITIES**

Restatement (3d) of Agency (2006). ........................................................................ 7

## I.  INTRODUCTION

Plaintiffs do not contest *any* of the facts in Mr. Sambol's affidavit establishing his lack of contacts with Minnesota. There is no dispute that Mr. Sambol has never lived in, worked in, or owned property in Minnesota; he has never personally transacted business in that State or with any of its residents; and he has never set foot in Minnesota with respect to any of the allegations in the Complaint. Nor do Plaintiffs dispute that they have never even met Mr. Sambol. And yet Plaintiffs attempt to invoke personal jurisdiction over Mr. Sambol in Minnesota based on one statement he made at an investor conference in New York, his alleged role in setting policy for Countrywide, and the alleged activities of Countrywide affiliates and their employees in Minnesota. None of these theories supports personal jurisdiction over Mr. Sambol in Minnesota as a matter of law. There are no factual allegations whatsoever to suggest that Mr. Sambol "expressly aimed" his investor conference statement or policy directives at Minnesotans specifically, and to allow otherwise would essentially subject corporate officers of public companies to nationwide service of process in all 50 states regardless of their connection to those states. With respect to Plaintiffs' proposition that the actions of corporate affiliates or their employees can furnish an individual basis for jurisdiction over an officer of the parent company, there is simply no legal support for such an unprecedented notion, nor do Plaintiffs provide any. Indeed, such a proposition is squarely at odds with prevailing Supreme Court law.

Moreover, even if there were personal jurisdiction over Mr. Sambol, Plaintiffs fail to state a claim against him under Minnesota law. The only statement by Mr. Sambol on which Plaintiffs purportedly relied is one he made at an investor forum—which was not incorporated in the relevant offering documents— concerning Countrywide's corporate culture. Opp'n at 49-50. But that is clearly an inactionable statement of corporate optimism that cannot support a claim for negligent misrepresentation, to say nothing of the fact that the Complaint does not

allege any facts suggesting Plaintiffs actually relied on that statement in purchasing securities from the relevant offerings.  In any event, Plaintiffs have not adequately alleged that they had the required "special relationship" with Mr. Sambol.  Likewise, Plaintiffs' Opposition does not explain how the Complaint alleges plausible facts demonstrating that Mr. Sambol aided and abetted any fraud.  Plaintiffs altogether ignore that the Court, in *Allstate Insurance Co. v. Countrywide Financial Corp.*, 2011 WL 5067128 (C.D. Cal. Oct. 21, 2011), rejected nearly identical negligent misrepresentation and aiding and abetting fraud claims under New York law, which share the same pleading requirements as Minnesota law.[1]

## II. PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING PERSONAL JURISDICTION OVER MR. SAMBOL

"Once a defendant has challenged a Federal Court's jurisdiction over that defendant's person," as Mr. Sambol has here, "the plaintiff bears the burden of proving that such jurisdiction exists."  *Minn. Pub. Radio v. Va. Beach Educ. Broad. Found.*, 519 F. Supp. 2d 970, 972 (D. Minn. 2007); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts by affidavit or otherwise, supporting personal jurisdiction.'").[2]  Plaintiffs have not met their burden of establishing personal jurisdiction over Mr. Sambol.

---

[1] The Complaint further fails to state a claim for the reasons stated in the Countrywide Defendants' and Mr. Mozilo's reply briefs, which Mr. Sambol joins in and incorporates by reference.

[2] As the Court is aware, Mr. Sambol's opening brief in support of his motion to dismiss was filed prior to the MDL transfer, when this action was still pending in the District of Minnesota.  Consistent with Mr. Sambol's opening brief, this reply brief relies on Eighth Circuit law, which is substantially similar to Ninth Circuit law with respect to the federal due process inquiry required by Minnesota's long arm statute.  For the Court's convenience, parallel authority from this Circuit is also cited in this brief.

A.  **Plaintiffs Have Not Demonstrated That Mr. Sambol Had "Minimum Contacts" With Minnesota**

Plaintiffs do not dispute that only one paragraph of the Complaint contains any allegations explicitly purporting to link Mr. Sambol to Minnesota, and even then that paragraph is nothing more than boilerplate directed at all of the "non-domiciliary Defendants." Compl. ¶12; Sambol Mem. at 3, 8-9. Nor do Plaintiffs contest any of the facts in Mr. Sambol's sworn affidavit establishing that he indeed has no relevant contacts with Minnesota. As Plaintiffs themselves admit, "Sambol did not personally attend the meetings with Plaintiffs in 2006 and 2007." Opp'n at 77. Under these circumstances, there is simply no basis for exercising personal jurisdiction over Mr. Sambol in Minnesota.

In their Opposition, Plaintiffs stitch together allegations having nothing to do with Minnesota or Mr. Sambol specifically and rely on discredited legal theories. Opp'n at 71-80. But this is too little, too late.[3]

First, Plaintiffs argue that jurisdiction is proper based on a single statement that Mr. Sambol made at an investor conference that occurred outside of Minnesota in September 2006. Opp'n at 75 (citing Compl. ¶61).[4] Notably, that statement did not concern the Certificates at issue or even Countrywide's underwriting practices with respect to the loans underlying the Certificates at issue; the statement dealt with Countrywide's corporate governance and culture. Compl. ¶61. Plaintiffs' theory appears to be that because this statement was "disseminated nationwide" it is

---

[3] Plaintiffs' Opposition makes no attempt to argue for general jurisdiction over Mr. Sambol, focusing entirely on specific jurisdiction. *See* Opp'n at 73. Nor does Plaintiffs' Opposition attempt to distinguish this case from a nearly identical lawsuit against Mr. Sambol in New Mexico, which was dismissed for lack of personal jurisdiction. *See New Mexico State Inv. Council v. Countrywide Fin. Corp.*, No. D-0101-CV-2008-02289 (N.M. Dist. Ct. Apr. 14, 2009).

[4] The Opposition obliquely refers to other public statements referenced in the Complaint, but none of those statements were made by Mr. Sambol. *See* Opp'n at 75 (citing ¶¶64, 66, 105-106, 209).

"sufficient to find that [Mr. Sambol] had contact with Minnesota." Opp'n at 75. But that is definitively wrong under the law.

Under the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 789-790 (1984), intentional tort claims *may* be a basis for jurisdiction where the alleged tortfeasor "expressly aimed" his conduct at the forum and "knew that the brunt of th[e] injury would be felt" by the plaintiffs in that state. However, neither the Eighth nor Ninth Circuits recognize the *Calder* test as an independent basis for jurisdiction—instead, they hold that the test merely supplies additional requirements when jurisdiction is premised on intentional torts, and both Circuits are clear that minimum contacts must still be satisfied as well. *Minn. Pub. Radio*, 519 F. Supp. 2d at 980; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802-804 (9th Cir. 2004). Mr. Sambol's statements about corporate governance and culture do not satisfy minimum contacts because they have no connection to Plaintiffs' claims of damage arising out of the particular Certificates at issue. *See Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (claims must be "related to or arise[ ] out of" defendant's contacts with forum state); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123-24 (9th Cir. 2002) (forum contacts must be the "but for" cause of plaintiff's injury).[5]

Even still, the Complaint lacks any factual allegations that Mr. Sambol "expressly aimed" his statements at Minnesota residents or that he "knew the brunt of th[e] injury would be felt" by Minnesotans. *See, e.g.*, *Steinbuch v. Cutler,* 518

---

[5] This Court and others have recognized the attenuated nature between such allegations concerning Countrywide generally and the specific Certificates purchased by plaintiffs in similar cases. *See Allstate*, 2011 WL 5067128, at *21 (Certificate purchaser "cannot recover in fraud against Countrywide merely because Countrywide underwrote risky loans and issued risky RMBS; [plaintiff] must establish that Countrywide lied about the attendant risks."); *Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *23-24 (S.D.N.Y. Sept. 28, 2010) ("The statements include comments on Countrywide's business as a whole; they do not relate to the Certificates plaintiffs purchased.").

OHSWEST:261450912.7

- 4 -

SAMBOL'S REPLY ISO MOTION TO DISMISS
11-CV-7154 MRP (MANx)

F.3d 580, 586 (8th Cir. 2008) (book published nationwide not aimed at forum); *Alsop v. Carolina Custom Prods., Inc.*, 2007 WL 2441025, at *7 (C.D. Cal. Jun. 29, 2007) ("[D]efendant must 'individually target' the forum state rather than just commit an act that has foreseeable effects in the forum state."). Indeed, at least one federal court in Minnesota has specifically held that "nationwide" statements necessarily cannot be "expressly aimed" at any particular forum. In *The Toro Co. v. Advanced Sensor Tech.*, 2008 WL 2564336, at *4 (D. Minn. June 25, 2008), plaintiff sought to premise personal jurisdiction on emails that were "part of a nationwide distribution list of over 11,000," 300 of which happened to reach Minnesota residents. The court dismissed the action for lack of personal jurisdiction because plaintiff "has not demonstrated that [defendant] expressly aimed its tortious conduct at Minnesota." *Id.*; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1022-23 (9th Cir. 2008) (Rymer, J., concurring) ("even though the advertisement or website at issue may be viewed nationwide," an out-of-state defendant "must have done something more to aim his [conduct] expressly at the state").[6]

---

[6] Plaintiffs' cited cases (Opp'n at 72, 75-76) are inapposite because they involve communications aimed specifically at forum residents. *See Am. Ass'n for Justice v. Am. Trial Lawyers Ass'n, Inc.*, 2008 WL 2690290, at *3 (D. Minn. July 1, 2008) ("100 membership solicitation letters sent to Minnesota residents in 2007, as well as follow-up membership and promotional materials sent to the eight Minnesota residents who responded to the letters"); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (defendants "are alleged to have communicated directly with Dole's California managers . . . . with the specific intent to cause injury"); *Ellwein v. Sun-Rise, Inc.*, 295 Minn. 109, 110 (1972) (Minnesota "was the focal point for all communications" at issue); *Nelson v. R. Greenspan & Co., Inc.*, 613 F. Supp. 342, 346 (E.D. Mo. 1985) (defendants made intentional misrepresentations to plaintiff in forum state); *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 820 (8th Cir. 1994) (defendant's representative visited forum, correspondence was directed to forum, and performance of contract entirely within forum). In *Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 453 (8th Cir. 1984), the court actually *upheld* the trial court's dismissal for lack of personal jurisdiction.

Second, Plaintiffs argue for personal jurisdiction in Minnesota based on Mr. Sambol's alleged role in the "expansion of Countrywide's mortgage loan portfolio" and installation of "a corporate culture that disregarded creditworthiness or evidence of fraud during loan origination and underwriting." Opp'n at 76. But again, these allegations are not tied to the specific Certificates that Plaintiffs purchased (or even the loans backing them). Nor are they tied to any particular policies or procedures that Countrywide instituted with respect to Minnesota. This argument is insufficient and fails for the same reasons as Plaintiffs' first argument regarding Mr. Sambol's investor conference statement. *See also Brown v. Gen. Steel Domestic Sales, LLC*, 2008 WL 2128057, at *11 (C.D. Cal. May 19, 2008) (rejecting personal jurisdiction based on allegations that company's president "formulates, controls, directs, supervises, perpetuates, manages and has knowledge of . . . the practices and policies of General Steel").[7]

In an even more illusory attempt to connect Mr. Sambol to Minnesota, Plaintiffs also contend that the alleged contacts of Countrywide corporate entities and their employees can be transferred to Mr. Sambol because those corporate entities and their employees were purportedly acting as Mr. Sambol's agents. Opp'n at 77-78. This is wholly unsupported under the law. Plaintiffs make no attempt to reconcile their purported "agency" theory with the well-established Supreme Court (and Eighth and Ninth Circuit) precedent that employees' contacts with the forum "are not to be judged according to their employer's activities there." *Calder*, 465 U.S. at 790; *see also* Sambol Mem. at 4-6 (citing numerous Eighth

---

[7] *Birts v. Vermillion*, 2009 WL 3126223, at *4-5 (W.D. Ark. Sept. 23, 2009), is inapposite because the defendant in that case held an insurance license from the forum and designed corporate policies aimed specifically at selling fraudulent living trusts to citizens of the forum. Plaintiffs' citation to cases involving claims for control person liability under Section 20(a) of the Securities Exchange Act (Opp'n at 76 n.49) is also misplaced because boilerplate allegations of "control," like those here, cannot establish personal jurisdiction as a matter of law. *See Toyz, Inc. v. Wireless Toyz, Inc.*, 2010 WL 334475, at *7 (N.D. Cal. Jan. 25, 2010).

Circuit cases); *accord Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989) ("correct jurisdictional inquiry" focuses on contacts of employee, not his employer). Nor could they, as federal courts have consistently rejected similar end-runs under the guise of "agency" theory. *See, e.g.*, *Pocahontas First Corp. v. Venture Planning Grp.*, 572 F. Supp. 503, 508 (D. Nev. 1983) ("The corporation is not an agent of the officer."); *Z-Rock Commc'ns Corp. v. William A. Exline, Inc.*, 2004 WL 1771569, at *19-20 (N.D. Cal. Aug. 6, 2004) (rejecting "agency theory" of jurisdiction over corporate officers based on "plaintiffs['] conten[tion] that AGM's employees in California are agents of Brandon and Salisbury because they are officers and directors of AGM"); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998) ("Suing the out-of-state officers of a large, multi-national corporation based upon their title, and absent any good faith basis for believing that they personally participated in the conduct underlying plaintiffs' lawsuit, will not confer jurisdiction under a theory of agency.").[8]

The Restatement of Agency similarly recognizes: "Employees of a single organization are presumed to be coagents of that organization, not subagents." Rest. (3d) of Agency §3.15 cmt. b (2006). The Restatement further explains: "In a relationship of coagency, neither agent is the other's agent. Thus, neither is vicariously liable for wrongs committed by the other." *Id.* §1.04 cmt. a. Plaintiffs

---

[8] The decisions cited by Plaintiffs (Opp'n at 77-78) are irrelevant, distinguishable, or both. *Vikse v. Flaby*, 316 N.W.2d 276, 282 (Minn. 1982), pre-dates controlling Supreme Court precedent and deals with an individual defendant who, unlike Mr. Sambol, was "involved in every transaction engaged in by [the company] with Minnesota residents." Likewise, *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988), involved defendants who were "primary actor[s] in the transaction in [the forum]," and "not some corporate employee[s] . . . who played no part in" it. *Finley v. River North Records, Inc.*, 148 F.3d 913, 916 (8th Cir. 1998), dealt with the exact opposite situation as the one here, *i.e.*, whether a corporation could be subject to jurisdiction based on the acts of its agent. And finally, *Chaikovska v. Ernst & Young, LLP*, 913 N.Y.S.2d 449, 452 (App. Div. 2010), is not even about personal jurisdiction.

1 | even concede that the employees in question were "agents *of the corporation*"—not
2 | Mr. Sambol's agents. Opp'n at 77-78. (emphasis added). Accordingly, under
3 | Plaintiffs' own allegations, the employees' alleged contacts could have
4 | jurisdictional significance only for their principal, Countrywide, and not for
5 | Mr. Sambol personally.
6 |      Nothing changes on account of Plaintiffs' conclusory assertion that
7 | Mr. Sambol was "aware" of purported problems with Countrywide's underwriting
8 | practices around the same time the Countrywide employees allegedly met with
9 | Plaintiffs about the Certificates. Opp'n at 78. Nearly identical allegations were
10 | rejected as a basis for personal jurisdiction in *Brown*, 2008 WL 2128057, at *11
11 | ("[Plaintiffs] also assert that [Knight, the president of the out-of-state company]
12 | 'knew or should have known of sales practices used by sales people on his or
13 | General Steel's behalf.' At most, these allegations indicate that Knight plays a
14 | broad managerial role within the company; they in no way suggest he was the
15 | 'guiding spirit' behind General Steel's advertising.").
16 |      Finally, Plaintiffs' request for jurisdictional discovery should also be denied.
17 | Opp'n at 72 n.47. Plaintiffs have failed to meet their threshold burden to establish a
18 | prima facie case of personal jurisdiction, and they have failed to specify how
19 | discovery would lead to facts that establish jurisdiction. *See Tuttle v. Lorillard*
20 | *Tobacco Co.*, 118 F. Supp. 2d 954, 959 (D. Minn. 2000) (denying jurisdictional
21 | discovery where plaintiff did not meet its prima facia burden); *Jennie-O Turkey*
22 | *Store, Inc. v. Food Movers Int'l, Inc.*, 2007 WL 2580599, at *4 (D. Minn. Sept. 5,
23 | 2007) (denying jurisdictional discovery where plaintiff did not "identif[y] any
24 | factual areas in need of supplementation which would change the outcome [of the
25 | court's personal jurisdiction holding]"); *EcoDisc Tech. AG v. DVD Format/Logo*
26 | *Licensing Corp.*, 711 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010) (Pfaelzer, J.)
27 | (denying jurisdictional discovery because plaintiff "failed to demonstrate how
28 | further discovery would allow it to contradict [defendant's declaration]").

### B. Exercising Jurisdiction Over Mr. Sambol In Minnesota Would Offend "Fair Play and Substantial Justice"

Even if Plaintiffs could establish that Mr. Sambol has minimum contacts with Minnesota, jurisdiction there would still be improper because it would offend "fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). None of Plaintiffs' arguments to the contrary has merit:

- Plaintiffs argue that Minnesota has an interest in protecting its citizens from torts. Opp'n at 79. But many of the Plaintiffs are not even Minnesota citizens (Compl. ¶14), and Plaintiffs do not explain why California courts could not protect those interests just as well.

- Plaintiffs argue in conclusory fashion that it is not inconvenient for Mr. Sambol to defend this lawsuit in Minnesota because he supposedly has sufficient resources, as evidenced by his former employer's size and nationwide network of branches. Opp'n at 79-80. Plaintiffs offer no support for this apparent connection, nor is there one.

- Plaintiffs assert that the Complaint does, in fact, allege that Mr. Sambol "should have known his public misrepresentations would harm MBS purchasers in Minnesota." Opp'n at 79 n.51. Plaintiffs cite not a single paragraph of the Complaint in support (nor does any such allegation exist).

In sum, Plaintiffs do not and cannot rebut the inconvenience and unfairness that would result from requiring a California citizen to come to Minnesota to defendant a lawsuit arising out of alleged misconduct that primarily occurred in California, involving a California company, and for which most witnesses and documents are located in California.

### III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. SAMBOL

Even assuming jurisdiction exists, the Complaint against Mr. Sambol should still be dismissed for failure to state a claim. Both of the claims against him—for

1 negligent misrepresentation and aiding and abetting fraud—should be dismissed for
2 the same reasons this Court dismissed identical claims in the *Allstate* case.

### A. The Negligent Misrepresentation Claim Fails

In order for Mr. Sambol to be liable under negligent misrepresentation, he must have made a misrepresentation to Plaintiffs. And yet the Opposition (like the Complaint) focuses entirely on alleged misrepresentations *in the offering documents*, which Mr. Sambol necessarily could not have made (nor is he even alleged to have made). Sambol Mem. at 10-12.

The *only* supposed misstatement by Mr. Sambol identified in the Opposition is his statement from the September 2006 investor conference regarding Countrywide's corporate culture. Opp'n at 49-50.[9] Mr. Sambol said:

> We're extremely competitive in terms of our desire to win, and we have a particular focus on offense, which at the same time is supplemented by a strong defense as well, meaning that we have an intense and ongoing focus on share growth while at the same time maintaining a very strong internal control environment and what we believe is best-of-class governance. . . . [O]ur culture is also characterized by a very high degree of ethics and integrity in everything that we do.

Compl. ¶61. But this kind of general statement touting a company's culture and ethics cannot serve as the basis for a material misrepresentation as a matter of law. *See, e.g.*, *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997) ("some statements are so vague and such obvious hyperbole that no reasonable investor would rely upon them"). Nor do Plaintiffs allege in any way how they relied on this statement in purchasing the Certificates at issue.

In any event, Plaintiffs also fail to allege the necessary "special relationship" with Mr. Sambol. Sambol Mem. at 12-13. Plaintiffs' conclusory assertion that Mr. Sambol had "unique and specialized knowledge" was rejected by this Court

---

[9] Here, again, the Opposition cites additional paragraphs of the Complaint that do not contain any public statements by Mr. Sambol. *See* Opp'n at 50 (citing Compl. ¶¶ 64, 66, 105, 209); *supra* n.3.

under nearly identical circumstances in the *Allstate* case. *See Allstate*, 2011 WL 5067128, at *23 n.27; *see also Summit Recovery, LLC v. Credit Card Reseller, LLC*, 2010 WL 1427322, at *4 (D. Minn. Apr. 9, 2010) (rejecting allegations of "special relationship . . . because [defendant] controlled the information about the Portfolio"). Likewise, Plaintiffs' reliance on the unpublished decision in *Cornerstone Home Builders, Inc. v. Guyers Dev., LLC*, 2010 WL 1541344 (Minn. Ct. App. Apr. 20, 2010), is without merit because Mr. Sambol could not have had a "pecuniary interest" in the Certificate transactions at issue since he was not a party to those transactions.

### B. The Aiding And Abetting Claim Fails

Plaintiffs contend that they have pled Mr. Sambol's actual knowledge of and substantial assistance in an underlying fraud. Opp'n at 51-58. Mr. Sambol will not repeat the reasons set forth in the Countrywide Defendants' and Mr. Mozilo's briefs regarding the insufficiency of Plaintiffs' allegations, but there are additional reasons why Plaintiffs' arguments regarding Mr. Sambol are insufficient.

Plaintiffs' effort to establish Mr. Sambol's actual knowledge and substantial assistance in connection with any fraud relating to the Certificates rests almost entirely on allegations relating to his purported role in Countrywide's underwriting and loan origination practices. Opp'n at 52-55. The Court rejected this same exact approach in *Allstate*, 2011 WL 5067128, at *20-21. Indeed, the particular allegations concerning Mr. Sambol that are highlighted in the Opposition are nearly identical to those that were considered and rejected in the Allstate decision. *Compare* Compl. ¶85 *with Allstate* Compl. ¶168 (email to Mozilo regarding securitizing more loans); Compl. ¶¶93, 106 *with Allstate* Compl. ¶¶146-149 (Mozilo emails regarding underwriting standards); Compl. ¶¶79-83, 91-95, 107, 108, 210-13 with *Allstate* Compl. ¶¶150-53, 145-49, 153, 159, 162, 175-81 (purported internal reports about the violations of Countrywide Home's underwriting standards). As the Court explained in the *Allstate* decision: "These

factual allegations, if true, would establish that Mozilo and Sambol had actual knowledge of, and substantial participation in, the underwriting of risky loans. What they would not do, and what is required under Rule 9(b), is establish knowledge of or participation in the alleged fraud." 2011 WL 5067128, at *20.

Plaintiffs' attempt to plead constructive knowledge based on vague allegations concerning Mr. Sambol's "long-term and in-depth relationships [with] the Countrywide Defendants" fares no better. Opp'n at 54-55. Minnesota law requires the pleading of actual knowledge—not merely constructive knowledge—for aiding and abetting liability. *See Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 188 (Minn. 1999) ("anything less than actual knowledge" is insufficient).[10] Regardless, Plaintiffs do not allege that Mr. Sambol had any relationship or role with the issuers of the Certificates, namely the Depositor Defendants, and his role with the ultimate parent company of Countrywide is not enough to infer his actual knowledge of the alleged fraud. *See, e.g.*, *In re TMJ Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1496 (8th Cir. 1997) (rejecting inference that parent company had knowledge of subsidiary's wrongdoing).

## IV.  CONCLUSION

For the foregoing reasons, the Complaint against Mr. Sambol should be dismissed with prejudice.

Dated: January 12, 2012   Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____*/s/ Michael C. Tu*_____
       Michael C. Tu

Attorneys for Defendant David Sambol

---

[10] Plaintiffs cite *dicta* from *Christopher v. Hanson*, 2011 WL 2183286, at *11 (D. Minn. June 6, 2011), but that decision went on to reject constructive knowledge as a basis for liability. *Id.*

OHSWEST:261450912.7

- 12 -

SAMBOL'S REPLY ISO MOTION TO DISMISS
11-CV-7154 MRP (MANx)