SETH ARONSON (S.B. #100153)
saronson@omm.com
MATTHEW W. CLOSE (S.B. #188570)
mclose@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

JONATHAN ROSENBERG *(pro hac vice)*
jrosenberg@omm.com
WILLIAM J. SUSHON *(pro hac vice)*
wsushon@omm.com
O'MELVENY & MYERS LLP
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for Defendants*
*Bank of America Corporation, NB Holdings Corporation, and Bank of America, N.A., as successor by July 1, 2011* de jure *merger to Defendant BAC Home Loans Servicing, L.P.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION CASES | Case No. 11-ML-02265-MRP (MANx)<br>**DEFENDANTS BANK OF AMERICA CORPORATION, NB HOLDINGS CORPORATION, AND BAC HOME LOANS SERVICING, L.P.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Date: January 26, 2012<br>Time: 1:00 p.m.<br>Courtroom: 12<br>Judge: Hon. Mariana R. Pfaelzer |
| THRIVENT FINANCIAL FOR LUTHERANS, *et al.*,<br><br>Plaintiffs,<br>v.<br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*,<br><br>Defendants. | Case No. 11-CV-07154-MRP (MANx) |

BAC DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

I. THE COMPLAINT DOES NOT PLEAD A *DE FACTO* MERGER UNDER DELAWARE LAW ........................................................................ 3

II. THE CONFLICT BETWEEN DELAWARE LAW AND MINNESOTA LAW REQUIRES THE COURT TO APPLY DELAWARE LAW .................................................................................... 4

III. THRIVENT'S CLAIM FAILS EVEN UNDER MINNESOTA LAW .......... 7

    A. Thrivent cannot adequately plead "continuity of shareholders" after the asset transfers because BAC did not purchase CFC assets with BAC stock ........................................................................ 8

    B. The Complaint does not allege that BAC assumed CFC's liabilities ..................................................................................... 8

    C. Thrivent's remaining allegations describe routine business activities that cannot plead a *de facto* merger ................................. 11

IV. THE COMPLAINT FAILS TO ALLEGE SUCCESSOR-LIABILITY CLAIMS AGAINST NB HOLDINGS OR BACHLS ................................. 12

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
  No. 2:11-CV-05236-MRP (MANx), 2011 WL 5067128 (C.D. Cal. Oct. 21, 2011) ................................................................................................ passim

*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*,
  No. CV 07-07097 MRP (MANx) (C.D. Cal. Mar. 19, 2009) ...................... 2, 6, 9

*Ark. Teacher Ret. Sys. v. Caiafa*,
  996 A.2d 321 (Del. 2010) ................................................................................... 2

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ....................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 9

*Corporate Prop. Assocs. 8, L.P. v. Amersig Graphics, Inc.*,
  Civ. A. No. 13241, 1994 WL 148269 (Del. Ch. Mar. 31, 1994) ....................... 7

*Drug, Inc. v. Hunt*,
  168 A. 87 (Del. 1933) ..................................................................................... 5, 6

*Fehl v. S.W.C. Corp.*,
  433 F. Supp. 939 (D. Del. 1977) ................................................................. passim

*In re Countrywide Corp. S'holders Litig.*,
  C.A. No. 3464-VCN, 2009 WL 846019 (Del. Ch. Mar. 31, 2009) .................... 2

*In re Countrywide Corp. S'holders Litig.*,
  C.A. No. 3464-VCN, 2009 WL 2595739 (Del. Ch. Aug. 24, 2009) .................. 7

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 2:10-CV-0302-MRP (MANx), 2011 WL 1765509 (C.D. Cal. Apr. 20, 2011) ................................................................................................ passim

*Sheppard v. A.C. & S. Co., Inc.*,
  484 A.2d 521 (Del. Super. Ct. 1984) .................................................................. 6

*Stern-Obstfeld v. Bank of Am.*,
  915 N.Y.S.2d 456 (N.Y. Sup. Ct. 2011) ........................................................... 10

*Sweatland v. Park Corp.*,
  181 A.D.2d 243 (N.Y. App. Div. 4th Dep't 1992) ........................................... 11

*Xperex Corp. v. Viasystems Tech. Corp., LLC*,
  No. 20582-NC, 2004 WL 3053649 (Del. Ch. July 22, 2004) ............................. 5

# INTRODUCTION[1]

Thrivent does not contest that it fails to plead a *de facto* merger claim against the BAC Defendants under this Court's application of Delaware law. Indeed, the Complaint lacks *any* allegations to satisfy *any* of the four *de facto* merger indicia this Court has identified—*i.e.*, that (i) "adequate consideration" was not "received and held" by CFC "in exchange for the assets that [CFC] transferred," (ii) the asset transfers failed to "comply with the statute governing such an asset sale," (iii) "creditors or stockholders [were] injured" as a result, and (iv) the asset sales were "designed to disadvantage shareholders or creditors." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302-MRP (MANx), 2011 WL 1765509, at *7 (C.D. Cal. Apr. 20, 2011). Thrivent cannot explain how or why its Complaint differs in any respect from those the Court dismissed in *Maine State* and *Allstate* (because, as Table A demonstrates, it does not). Accordingly, Thrivent's Complaint should also be dismissed.

Thrivent relies on *Fehl v. S.W.C. Corporation*, 433 F. Supp. 939 (D. Del. 1977), in arguing that Minnesota and Delaware law are indistinguishable. But as this Court held in *Maine State*, *Fehl* illustrates the first *de facto* merger factor because it examined whether an asset seller received and held consideration in exchange for its assets. Thrivent does not dispute that CFC received nearly $50 billion in consideration in exchange for selling assets to BAC, and so under *Fehl*, Thrivent's *de facto* merger claim must be dismissed for that reason alone.

---

[1] This reply memorandum (i) uses the terms defined in Defendants Bank of America Corporation, NB Holdings Corporation, and BAC Home Loans Servicing, L.P.'s Memorandum of Law in Support of Their Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) [Dkt. 114] ("Def. Mem."); (ii) defines the BAC Defendants' Supplemental Memorandum of Points and Authorities Under the Court's October 25, 2011 Order [Dkt. 150] as "Def. Supp. Mem."; and (iii) defines Thrivent's Opposition to Defendants' Motions to Dismiss and Strike [Dkt. 157] as "Opp." Unless otherwise noted, all internal citations and quotation marks are omitted, and all emphasis is added.

Because of that robust consideration, Thrivent focuses instead on BAC's stock payment to CFC shareholders in the July 1, 2008 merger between CFC and BAC subsidiary Red Oak. As this Court has repeatedly observed, however, that transaction could not be the basis of a *de facto* merger claim because it was a *de jure* merger into a BAC subsidiary in which BAC acquired all outstanding CFC stock, not its assets.[2] And as this Court has also noted, the Delaware Chancery Court rigorously analyzed that transaction and found "precious little doubt that the consideration" BAC provided "was anything other than at least fair." *In re Countrywide Corp. S'holders Litig.*, C.A. No. 3464-VCN, 2009 WL 846019, at *14 (Del. Ch. Mar. 31, 2009), *aff'd sub nom.*, *Ark. Teacher Ret. Sys. v. Caiafa*, 996 A.2d 321 (Del. 2010). Moreover, Delaware's doctrine of independent legal significance bars Thrivent's attempt to state a *de facto* merger claim by combining the CFC–Red Oak merger transaction with the subsequent BAC–CFC asset purchases.

Thrivent's claim would fail even under the alternative Minnesota standard that Thrivent proposes:

- Thrivent cannot plead "continuity of shareholders" after the asset transfers because BAC did not "pay[] for the acquired [CFC] assets with shares of its own stock," as Thrivent admits Minnesota law requires. Rather, Thrivent does not dispute that BAC provided approximately $50 billion in consideration to CFC.

- Equally deficient is Thrivent's attempt to plead that BAC assumed all of CFC's "obligations . . . necessary for uninterrupted continuation of [CFC's] business operations," because this Court has already found that

---

[2] Compl. ¶ 29; Bank of America Corp., Registration Statement (Form S-4), App. A (May 28, 2008) (attaching merger agreement) (Hashmall Decl. Ex. G). *See also Allstate*, 2011 WL 5067128, at *23; *Maine State*, 2011 WL 1765509, at *8, *8 n.3; *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Financial Corp.*, No. CV 07-07097 MRP (MANx), slip op. at 8–9 (C.D. Cal. Mar. 19, 2009) (Hashmall Decl. Ex. B).

the allegations on which Thrivent relies—that BAC modified some Countrywide mortgages, settled some Countrywide litigation, and made statements in 2010 about Countrywide liabilities—are insufficient to allege that BAC assumed all of Countrywide's liabilities.

The end result is a complaint no different from those that the Court has previously dismissed, requiring a legal standard no different from that which the Court has already applied. This Court should therefore dismiss Thrivent's successor-liability claim.

## ARGUMENT

### I. THE COMPLAINT DOES NOT PLEAD A *DE FACTO* MERGER UNDER DELAWARE LAW.

Nowhere in its opposition does Thrivent dispute that its Complaint fails to state a *de facto* merger claim under this Court's prior applications of Delaware law. In those cases, the Court reviewed four factors:

(1) "was adequate consideration received and held by the transferor corporation in exchange for the assets that were transferred";

(2) "did the asset transfer comply with the statute governing such an asset sale";

(3) "were creditors or stockholders injured by a failure to comply with the statute governing an asset sale"; and

(4) "was the sale designed to disadvantage shareholders or creditors?"

*Maine State Ret. Sys.*, 2011 WL 1765509, at *7; *see also Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-05236-MRP (MANx), 2011 WL 5067128, at *23 (C.D. Cal. Oct. 21, 2011).

Thrivent makes no effort to argue that its Complaint satisfies any of these factors. It does not contest that the Complaint lacks any factual allegations showing intent to harm CFC's or CHL's shareholders or creditors, or that the asset transfers did not comply with Delaware statutes. And as in *Maine State* and *Allstate*,

Thrivent cannot allege "that adequate consideration was not received and held by CFC in exchange for the assets that were transferred to Bank of America," because (i) "contemporaneous public SEC filings make clear [that] Bank of America acquired CFC's assets in exchange for valuable consideration totaling billions of dollars that included the assumption of debt securities and related guarantees of Countrywide in an aggregated amount of approximately $16.6 billion" for the November 2008 transaction, *Maine State*, 2011 WL 1765509, at *8; and (ii) CFC and CHL received nearly $30 billion more in exchange for other assets in July 2008.[3] What few allegations the Complaint includes[4] closely track those that the Court held deficient in *Maine State*, *Allstate*, and *Argent*, as Table A demonstrates.

## II. THE CONFLICT BETWEEN DELAWARE LAW AND MINNESOTA LAW REQUIRES THE COURT TO APPLY DELAWARE LAW.

To avoid addressing Delaware law—which Thrivent does not contest would apply in the event of a conflict with Minnesota law[5]—Thrivent argues that Minnesota and Delaware law are the same. Opp. at 58–65. But Minnesota considers the same *de facto* merger factors as New York, which the Court has previously held conflict with Delaware's more "deferential" standard. *Compare* Opp. at 62 (stating Minnesota factors) *with Allstate*, 2011 WL 5067128, at *4 (stating identical New York factors). Because a conflict exists, Delaware law—and the Court's analysis in *Maine State* and *Allstate*—will govern here. *See Maine State*, 2011 WL 1765509, at *4 (applying Delaware law over conflicting California law "because the issue of whether an asset transfer constitutes a *de facto* merger is peculiar to corporations"); *Allstate*, 2011 WL 5067128, at *4 (applying Delaware law over conflicting New York law because "the law of the state of incorporation [Delaware] should govern such a core attribute" as liability).

---

[3] Countrywide Fin. Corp., Current Report (Form 8-K), at 5 (July 8, 2008) (Hashmall Decl. Ex. J).
[4] Compl. ¶¶ 29, 31, 259–64, 320–26.
[5] *See* Def. Mem. at 10–18; Def. Supp. Mem. at 1–4.

4
BAC DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Thrivent's entire opposition rests on revisiting this Court's painstaking analysis of Delaware law. Thrivent argues that a 1977 Delaware federal district-court decision, *Fehl v. S.W.C. Corporation*, 433 F. Supp. 939, 948 (D. Del. 1977), applied the same four-factor test that Minnesota law employs. Opp. at 58–65. Thrivent is wrong for at least three reasons.

*First,* and most significantly, this Court relied on *Fehl* in synthesizing Delaware law. *Fehl*, the Court observed, was an example of "Delaware courts consider[ing]" the first *de facto* merger element—"whether consideration was received and held in exchange for the assets that were transferred." *Maine State*, 2011 WL 1765509, at *5 (quoting *Fehl*, 433 F. Supp. at 947 ("In general, no liability has been found under a de facto merger theory so long as . . . the seller received and held consideration.")). Likewise, the Court found that another authority on which Thrivent relies, *Drug, Inc. v. Hunt*, 168 A. 87, 96 (Del. 1933), stood for the same proposition because it involved a direct payment "to the stockholders of the transferor corporation, not to the transferor corporation itself. Therefore, there was no consideration received and held by the transferor corporation." *Maine State*, 2011 WL 1765509, at *6. By evaluating whether the transferor received and held consideration to pay its creditors, Thrivent's authorities therefore undermine—not support—its assertion that it need not allege "disadvantage[]"[6] to the transferee's creditors. *See, e.g.*, *Drug, Inc.*, 168 A. at 95 (finding *de facto* merger because "the consideration for the assets transferred . . . certainly so far as creditors were concerned, rightfully belonged to the corporation"). Thrivent's other Delaware authorities either (i) support BAC because they require an intent to harm shareholders or creditors (which Thrivent does not dispute it fails to allege), *see Xperex Corp. v. Viasystems Tech. Corp., LLC*, No. 20582-NC, 2004 WL 3053649, at *2 (Del. Ch. July 22, 2004) (finding that *de facto* merger inquiry "turns on the *intent* of the" directors who approved the

---

[6] Opp. at 64 n.40.

5
BAC DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

asset sales); or (ii) do not apply because they involved a *de jure*, not a *de facto*, merger, *see Sheppard v. A.C. & S. Co., Inc.*, 484 A.2d 521, 525 (Del. Super. Ct. 1984) (addressing alleged successor's potential punitive-damages asbestos liability "not from a mere sale of assets but through the formality of a *de jure* merger").

*Second,* Thrivent's claim is not one of the "few" *de facto* merger cases where "the consideration passed directly to the transferor's *stockholders* without coming into possession of the transferor corporation." *Maine State*, 2011 WL 1765509, at *5 (quoting *Fehl*, 433 F. Supp. at 947). Thrivent does not contest the Court's conclusion in *Maine State* that CFC—not its stockholders—received and "retained" "valuable consideration totaling billions of dollars" in exchange for CFC's assets, which defeats Thrivent's claim under both *Fehl* and *Drug, Inc*. *Id.* at *8. Thrivent's conclusory assertion that BAC "left no assets" in CFC (Opp. at 68) ignores these facts, of which the Court has repeatedly taken judicial notice. *See Allstate*, 2011 WL 5067128, at *23; *Maine State*, 2011 WL 1765509, at *8, *8 n.3; *Argent*, slip op. at 8 (Hashmall Decl. Ex. B).

Nor can Thrivent rely on the BAC stock payment to CFC stockholders in the CFC–Red Oak merger (Opp. at 66-67) as *Fehl*'s required payment "directly to the transferor's stockholders." *Fehl*, 433 F. Supp. at 947. As the Court has already explained, that transaction was not a mere asset transfer to which *Fehl* applies, but a forward triangular merger in which Red Oak succeeded to all of CFC's assets *and* liabilities. *Maine State*, 2011 WL 1765509, at *1, *8; *Allstate*, 2011 WL 5067128, at *23. Thrivent likewise cannot combine the Red Oak merger's stock-for-stock consideration with the subsequent BAC–CFC asset sales for cash equivalents. That is because "Delaware respects the independent legal significance of transactions, even when under common ownership and control, as long as they comply with statutory authority," and Thrivent does not dispute that all these transactions complied with Delaware statutes. *Maine State*, 2011 WL 1765509, at *8. In any event, Thrivent has no basis to impugn the Red Oak merger's fairness because the

Delaware Chancery Court, after a "year's worth of . . . very hard work,"[7] found "no evidence that the price paid by [BAC] was anything other than fair." *In re Countrywide Corp. S'holders Litig.*, C.A. No. 3464-VCN, 2009 WL 2595739, at *3 (Del. Ch. Aug. 24, 2009).

*Third*, contrary to Thrivent's assertion, *Fehl* neither cited nor applied the Minnesota cases' *de facto* merger factors. Opp. at 61–63. The facts that Thrivent identifies in *Fehl* relate to the court's evaluation of whether "the successor corporation is a *mere continuation* of the predecessor under a different corporate name," which was another basis for successor liability (along with *de facto* merger). *Fehl*, 433 F. Supp. at 945. In that regard, the court evaluated whether the seller "continued in corporate existence" or "maintained any ownership or management interest in" the buyer, or whether the buyer "agreed to assume all of the seller's obligations." Opp. at 62 (quoting *Fehl*, 433 F. Supp. at 948, 948 n.15). It concluded that "plaintiff has not met its burden of establishing that [the buyer] is the *present-day embodiment* of the [seller]." *Fehl.* at 948. Here, Thrivent's opposition makes clear that BAC is not the "present-day embodiment" of CFC, but rather that BAC merely integrated CFC's business into its existing mortgage operations. *See* Opp. at 69 (citing allegations that BAC "transferred" Countrywide's business to "combined operations of Bank of America Home Loans"). For that reason, as well, Thrivent's reliance on *Fehl* and another "mere continuation" case, *Corporate Property Associates 8, L.P. v. Amersig Graphics, Inc.*, is misplaced. Civ. A. No. 13241, 1994 WL 148269, at *5 (Del. Ch. Mar. 31, 1994) ("[A] corporation, under the guise of an asset transfer, should not be permitted to take over the essence of another corporation . . . . Undeniably, to prevail on such a theory, plaintiffs must meet the rigorous standard of showing that

---

[7] Tr. at 24–25, *Putnam Bank v. Countrywide Fin. Corp.*, Case No. CV 11-04698-MRP (MANx) (C.D. Cal. Oct. 17, 2011) (attached as Exhibit A to the accompanying Declaration of Matthew W. Close in Support of the BAC Defendants' Request for Judicial Notice in Support of Their Motion to Dismiss at 7–8("Close Decl.")).

[the alleged successors] are a 'continuation' of [the predecessors].").

## III. THRIVENT'S CLAIM FAILS EVEN UNDER MINNESOTA LAW.

Thrivent's *de facto* merger allegations would be defective even under Minnesota law. That is because, as Thrivent admits, Minnesota law requires factual allegations showing, among other things, (i) "continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock," and (ii) the buyer's assumption of "the obligations of the seller necessary for uninterrupted continuation of business operations." Opp. at 62, 66, 70 (citing *T.H.S. Northstar Assocs. v. W.R. Grace & Co.*, 840 F. Supp. 676, 678 (D. Minn. 1993)). Thrivent has alleged neither.

### A. Thrivent cannot adequately plead "continuity of shareholders" after the asset transfers because BAC did not purchase CFC assets with BAC stock.

Thrivent does not dispute that BAC acquired CFC assets not "with shares of its own stock," as Minnesota law requires, but with "valuable consideration totaling billions of dollars that included" (i) nearly $30 billion that CFC and CHL received for their assets in July 2008;[8] and (ii) "the assumption of debt securities and related guarantees of Countrywide in an aggregated amount of approximately $16.6 billion" for CFC assets in November 2008. *Maine State*, 2011 WL 1765509, at *8. Because those asset transfers involved no stock payments whatsoever, Thrivent plainly cannot show "continuity of shareholders" after the asset transfers under Minnesota law. Again, Thrivent relies solely on the Red Oak–CFC *de jure* merger because that transaction involved a BAC stock payment to CFC shareholders. Opp. at 66–67. As described above, however, that transactions was not an asset sale that could be deemed a *de facto* merger, but a *de jure* merger in which a BAC subsidiary acquired all of CFC's assets *and* liabilities. *See* pp. 6–7, *supra*.

---

[8] Countrywide Fin. Corp., Current Report (Form 8-K), at 5 (July 8, 2008) (Hashmall Decl. Ex. J).

8
BAC DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

### B. The Complaint does not allege that BAC assumed CFC's liabilities.

Nor has Thrivent adequately pleaded that BAC assumed all of CFC's "obligations . . . necessary for uninterrupted continuation of [CFC's] business operations," as Minnesota law requires. Opp. at 62, 70 (citing *T.H.S. Northstar*, 840 F. Supp. at 678). Thrivent makes no effort to explain why its Complaint is any different in this regard from that in *Allstate*, which the Court dismissed because Allstate had "not identified any express contractual assumption of liabilities," and "direct[ed] the Court to nothing that would indicate that Bank of America impliedly assumed Countrywide's liabilities." *Allstate*, 2011 WL 5067128, at *23; *see also*, *Argent*, slip op. at 8 (dismissing *de facto* merger claim because "[n]othing properly before the Court suggest[ed] that BofA has done more than expressly assume *some* liabilities in consideration of the acquisition" of CFC assets) (Hashmall Decl. Ex. B).[9]

So too here. Contrary to Thrivent's contention that it has plausibly alleged that BAC assumed CFC's liability to Thrivent (Opp. at 71), Thrivent's opposition relies almost exclusively on allegations that BAC agreed to modify certain Countrywide loans and settle certain other Countrywide litigation. Opp. at 70–71. The Court addressed—and rejected—precisely such allegations in dismissing the *Maine State* and *Allstate* complaints. See *Maine State*, 2011 WL 1765509, at *2 (citing allegations that BAC "assumed CFC's liabilities, having paid to resolve other litigation arising from misconduct . . . allegedly committed by CFC"); *Allstate*, 2011 WL 5067128, at *23 (dismissing *de facto* merger claim based on "identical facts to those pleaded" in *Maine State*). Moreover, Thrivent concedes that only CHL and CFC[10] signed the settlement agreements, and its conclusory

---

[9] *See also* Def. Mem. at 9–10, 23–24.
[10] Thrivent's assertion that CFC merged with BAC subsidiary NB Holdings is incorrect, as public records show that CFC remains a separate, wholly owned BAC subsidiary. *See* Hierarchy Report as of January 9, 2012, for Bank of America

9
BAC DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

assertion that BAC "ultimately satisfied the obligations" (even though it was not a party) lacks any factual support, rendering it defective under *Twombly* and *Iqbal*. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (rejecting "naked assertion[s] devoid of further factual enhancement"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that district court is not "bound to accept as true a legal conclusion couched as a factual allegation").

As shown in the BAC Defendants' opening brief,[11] the Court has also declined to find an assumption of liabilities from alleged public statements that do not reflect (and cannot change) legal reality. Like Allstate before it,[12] Thrivent relies on former BAC CEO Kenneth Lewis's alleged statement that BAC "looked at every aspect of the deal, from [CFC's] assets to potential lawsuits." Opp. at 70–71. In dismissing Allstate's complaint—which Thrivent does not even acknowledge, let alone try to distinguish—the Court specifically addressed "statements to the effect that Bank of America had purchased Countrywide's assets and liabilities, and that it had factored Countrywide's liabilities into the purchase price." *Allstate*, 2011 WL 5067128, at *23. The Court concluded that, far from showing BAC's assumption of CFC's liabilities, such statements merely "accurately reflect the structure of the transaction, in which a Bank of America subsidiary purchased CFC. That transaction included all of CFC's assets and liabilities . . . ." *Id.* Even farther afield is Thrivent's reliance not on a BAC statement, but on a lone state court's hearsay characterization of a Bank of America, N.A. outside counsel's apparent (and incorrect) statement in one foreclosure action that BANA "is the successor by merger of Countrywide Home Loans, Inc., and Country Wide Bank, N.A." *Stern-*

---

Corporation (1073757) at Seq. No. 2786, *available at* http://www.ffiec.gov/nicpubweb/nicweb/OrgHierarchySearchForm.aspx?parID_RSSD=1073757&parDT_END=99991231 (Close Decl. Ex. B, at 13).
[11] Def. Mem. at 24–25.
[12] Plaintiffs' Mem. of Law in Opp. to Defendants' Mot. to Dismiss at 127, *Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 10 Civ. 9591 (AKH) (S.D.N.Y. May 9, 2011) (Close Decl. Ex. C, at 22).

*Obstfeld v. Bank of Am.*, 915 N.Y.S.2d 456, 461 (N.Y. Sup. Ct. 2011). These loose statements do not reflect any express or implied assumption of liabilities that the Court required in *Allstate*, and supply no basis to depart from that holding. 2011 WL 5067128, at *23.

### C.  Thrivent's remaining allegations describe routine business activities that cannot plead a *de facto* merger.

Because Thrivent cannot plead the first two elements of a *de facto* merger claim under Minnesota law, its remaining allegations—that BAC ceased Countrywide's business and integrated it with Bank of America Home Loans (Opp. at 67–70)—cannot salvage its claim. In any event, as the BAC Defendants made clear in their opening brief,[13] those allegations merely describe non-actionable (i) routine business-integration activities between BAC's legacy businesses and CFC's legacy operations—*i.e.*, retiring Countrywide's brand,[14] redirecting visitors to the Countrywide website to the Bank of America website, or using former Countrywide office space; and (ii) vague statements from BAC representatives about integration issues such as "deepening relationships with existing Countrywide customers." Opp. at 67–69. As the Court aptly put it, these allegations amount to little more than alleging that BAC "put [its] name on the stationery."[15] The Court dismissed such allegations in *Maine State* and *Allstate*, and it should do the same here. *See* Table A; *Allstate*, 2011 WL 5067128, at *23; *Maine State*, 2011 WL 1765509, at *2 (dismissing *de facto* merger claim based on allegations that "Countrywide brand was retired shortly after the merger and currently CFC's former website redirects the user to the Bank of America website" and that "many of the same locations,

---

[13]   Def. Mem. at 21–23.
[14]   Thrivent's authority, by contrast, involved an asset purchaser that did not retire the seller's brand, but rather continued to advertise it. *See Sweatland v. Park Corp.*, 181 A.D.2d 243, 245 (N.Y. App. Div. 4th Dep't 1992) (finding factual *de facto* merger issue under New York law because purchaser "advertises [seller's] name and tradition").
[15]   *Putnam* Tr. at 26 (Close Decl. Ex. A, at 9).

employees, assets and business operations that were formerly CFC continue under the Bank of America Home Loans brand").

## IV. THE COMPLAINT FAILS TO ALLEGE SUCCESSOR-LIABILITY CLAIMS AGAINST NB HOLDINGS OR BACHLS.

Thrivent's opposition does not even attempt to defend its claims that (i) NB Holdings is CHL's successor, or (ii) BACHLS is CFC's or CHL's successor. As shown in the BAC Defendants' opening brief, the Complaint's solitary allegation that CHL sold "substantially all" of its assets to NB is insufficient to plead successor liability. Def. Mem. at 28–29. This Court has already dismissed two similarly unadorned claims. *See Maine State*, 2011 WL 1765509, at \*8 ("The SAC states only that CHL sold 'substantially all of its assets to NB Holdings' on July 3, 2008. These allegations are insufficient to plead successor liability under the doctrine of *de facto* merger."); *Allstate*, 2011 WL 5067128, at \*23 (dismissing claim "that NB Holdings Corp. is liable as Countrywide's successor" because plaintiff "has not alleged any facts which would support such a claim"). As for BACHLS (formerly CHLS, now part of BANA by virtue of a July 1, 2011 *de jure* merger), the Complaint lacks not only a successor-liability allegation, but also any allegation of *primary* liability. Def. Mem. at 30. Accordingly, Thrivent's claim (whatever it is) against BACHLS should also be dismissed.

## CONCLUSION

Thrivent concedes that it has not stated a *de facto* merger claim against the BAC Defendants under Delaware law as this Court applied it in *Maine State* and *Allstate*. Nor does it try to distinguish its Complaint or those cases. Instead, it merely attacks this Court's comprehensive Delaware-law analysis by relying on a case that (i) the Court expressly considered, and (ii) requires dismissal of Thrivent's *de facto* merger claim. And even if the Minnesota-law factors applied, Thrivent's claim would still fail because (i) BAC did not acquire CFC assets with its own stock, but with an undisputed nearly $50 billion in cash equivalents; and (ii)

Thrivent fails to allege that BAC assumed CFC's liabilities or that BAC did anything other than essentially "put [its] name on the stationery." As it did in *Maine State* and *Allstate*, the Court should dismiss Thrivent's equally deficient Complaint.

Dated:  January 12, 2012

SETH ARONSON
MATTHEW W. CLOSE
JONATHAN ROSENBERG
WILLIAM J. SUSHON
O'MELVENY & MYERS LLP


By: /s/ Matthew W. Close
     Matthew W. Close

*Attorneys for Defendants Bank of America Corporation, NB Holdings Corporation, and Bank of America, N.A., as successor by July 1, 2011* de jure *merger to Defendant BAC Home Loans Servicing, L.P.*

# **TABLE A**

**TABLE A:**
**The *Thrivent* Complaint's successor-liability claims are based on the same factual allegations that the Court held inadequate to plead a *de facto* merger.**

| *Thrivent Fin. for Lutherans, et al. v. Countrywide Fin. Corp., et al.*, No. 11-CV-07154-MRP (C.D. Cal.) | *Allstate Ins. Co., et al. v. Countrywide Fin. Corp., et al.*, No. 11-CV-05236-MRP (C.D. Cal.) | *Maine State Ret. Sys. v. Countrywide Fin. Corp., et al.*, No. 2:10-CV-00302 (MRP) (C.D. Cal.) | *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp., et al.*, CV 07-07097 (MRP) (C.D. Cal.) |
|---|---|---|---|
| "Bank of America[] acqui[red] Countrywide Financial on July 1, 2008 through an all-stock transaction involving a wholly-owned Bank of America subsidiary. . ." (Compl. ¶¶ 29, 322 (Mar. 24, 2011).) | "On July 1, 2008, Bank of America completed its merger with Defendant Countrywide Financial." (Compl. ¶ 338 (Dec. 27, 2010).) | "On July 1, 2008, Defendant CFC completed a merger with Red Oak Merger Corporation ('Red Oak'), a wholly-owned subsidiary of Bank of America . . . ." (SAC ¶ 38 (Dec. 6, 2010).) | "On July 1, 2008, Countrywide completed a forward triangular merger with Red Oak Merger Corporation ('Red Oak'), a subsidiary of BOA." (Opp. to Bank of America Corp. Mot. to Dismiss at 2 (Feb. 6, 2009).) |
| "[O]n November 7, 2008, Countrywide Financial and Countrywide Home 'transferred substantially all of their assets and operations to [Bank of America].' This transfer of assets was 'in connection with the integration of Countrywide Financial Corporation with [Bank of America's] other businesses and operations.' " (Compl. ¶ 260.) | "Substantially all of Countrywide Financial's and Countrywide Home Loans' assets were transferred to Bank of America on November 7, 2008 'in connection with Countrywide's integration with Bank of America's other businesses and operations,' along with certain of Countrywide's debt securities and related guarantees." (Compl. ¶ 345.) | "Substantially all of Countrywide's assets were transferred to Bank of America on November 7, 2008, in connection with Countrywide's integration with Bank of America's other businesses and operations, along with certain of Countrywide's debt securities and related guarantees." (SAC ¶ 38.) | " 'On November 7, 2008, in connection with the integration of Countrywide Financial Corporation ("Countrywide") with [BOA]'s other businesses and operations, Countrywide and its subsidiary Countrywide Home Loans, Inc. ("CHL") transferred substantially all of their assets and operations to [BOA] . . .'." (Opp. Br. at 4.) |

| *Thrivent Fin. for Lutherans, et al. v. Countrywide Fin. Corp., et al.*, No. 11-CV-07154-MRP (C.D. Cal.) | *Allstate Ins. Co., et al. v. Countrywide Fin. Corp., et al.*, No. 11-CV-05236-MRP (C.D. Cal.) | *Maine State Ret. Sys. v. Countrywide Fin. Corp., et al.*, No. 2:10-CV-00302 (MRP) (C.D. Cal.) | *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp., et al.*, CV 07-07097 (MRP) (C.D. Cal.) |
|---|---|---|---|
| "Bank of America has assumed Countrywide's liabilities, having paid to resolve other litigation arising from misconduct such as predatory lending allegedly committed by Countrywide." (Compl. ¶ 29.) | "Bank of America took steps to expressly and impliedly assume Countrywide Financial's liabilities." (Compl. ¶ 345.) | "Bank of America has assumed CFC's liabilities, having paid to resolve other litigation arising from misconduct such as predatory lending allegedly committed by CFC." (SAC ¶ 38.) | "BOA's press release stated the: 'intention of Bank of America to assume the obligations of Countrywide Financial Corporation and Countrywide Home Loans….' " (Opp. Br. at 3.) |
| "[T]he Countrywide brand has been retired and the old Countrywide website redirects customers to the mortgage and home loan sections of the Bank of America's website." (Compl. ¶¶ 264, 265, 323.) | "Bank of America rebranded Countrywide Home Loans as 'Bank of America Home Loans.' " (Compl. ¶ 342.)<br><br>"Countrywide Financial's former website now redirects to the Bank of America's website." (Compl. ¶ 343.) | "The Countrywide brand was retired shortly after the merger." (SAC ¶ 38.)<br><br>"CFC's former website redirects to the Bank of America website." (SAC ¶ 38.) | |
| "A California federal court recently found that since the merger, 'Countrywide's remaining operations and employees have been transferred to Bank of America.'" (Compl. ¶ 260.) | "Many former Countrywide locations, employees, assets, and business operations now continue under the Bank of America Home Loans brand." (Compl. ¶ 342.) | "[M]any of the same locations, employees, assets and business operations that were formerly CFC continued under the Bank of America Home Loans brand." (SAC ¶ 38.) | |

| *Thrivent Fin. for Lutherans, et al. v. Countrywide Fin. Corp., et al.*, No. 11-CV-07154-MRP (C.D. Cal.) | *Allstate Ins. Co., et al. v. Countrywide Fin. Corp., et al.*, No. 11-CV-05236-MRP (C.D. Cal.) | *Maine State Ret. Sys. v. Countrywide Fin. Corp., et al.*, No. 2:10-CV-00302 (MRP) (C.D. Cal.) | *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp., et al.*, CV 07-07097 (MRP) (C.D. Cal.) |
|---|---|---|---|
| "Countrywide also ceased submitting filings to the SEC, which are now submitted as part of Bank of America's filings." (Compl. ¶ 260.) | "Countywide Financial ceased filing its own financial statements in November 2008, and its assets and liabilities have been included in Bank of America's recent financial statements." (Compl. ¶ 341, 349.) | "CFC ceased filing its own financial statements in November 2008, and instead its assets and liabilities have been included in Bank of America's financial statements." (SAC ¶ 38.) | |

3