# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, *et al*.,<br><br>     Plaintiffs,<br><br>    -against-<br><br>COUNTRYWIDE FINANCIAL CORP., *et al*.,<br><br>     Defendants. | 10 Civ. 9591 (AKH) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS**

                  QUINN EMANUEL URQUHART &
                    SULLIVAN, LLP
                  Daniel L. Brockett
                  Marc L. Greenwald
                  David D. Burnett
                  Matthew J. MacDonald
                  51 Madison Avenue, 22nd Floor
                  New York, New York 10010-1601
                  Telephone: (212) 849-7000
                  Fax: (212) 849-7100

                  *Attorneys for Plaintiffs*

Exhibit C
Pg. 15

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................1

LEGAL STANDARD.........................................................................................................4

ARGUMENT ......................................................................................................................8

I. ALLSTATE'S FACTUAL ALLEGATIONS SUFFICIENTLY SUPPORT THE ALLEGATION THAT THE REPRESENTATIONS WERE FALSE ................................8

    A. Underwriting Abandonment and Abuse of Exceptions ............................................8

        1. Allegations identifying the representations ..................................................8

        2. Allegations regarding the falsity of the representations ...............................9

        3. Allegations of expansion support allegations of abandonment ..................11

        4. Allegations tying the systemic problems to these Certificates ..................12

        5. Courts routinely sustain systemic abandonment claims .............................14

        6. Underwriting abandonment is not cured by statistical disclosures............16

        7. The underwriting process was affirmatively misrepresented ....................18

    B. Loan to Value and Cumulative Loan to Value Statistics........................................19

        1. Allegations identifying the representations ................................................19

        2. Allegations regarding the falsity of the representations .............................19

        3. Allegations that Countrywide did not genuinely believe in the appraisal "opinions"..................................................................................21

        4. The AVM draws from contemporaneous data............................................24

    C. Whether the Properties Were Owner-Occupied .....................................................24

        1. Allegations identifying the representations ................................................24

        2. Allegations regarding the falsity of the representations .............................25

        3. Countrywide was speaking as to the owner-occupancy rates....................26

|   |   | 4. | Testing owner-occupancy to gauge the accuracy of Defendants' representations is not 'fraud by hindsight'.................................................27 |
|---|---|---|---|

D. The Ratings Process and Relevancy of the Ratings Given ....................................28

    1. Allegations identifying the representations ..............................................28

    2. Allegations regarding the falsity of the representations ............................28

    3. Whether the ratings were tied to these Certificates is not an "opinion"...................................................................................................29

    4. A garbage-in, garbage-out claim does not turn on the accuracy of the rating agencies' models........................................................................29

E. Countrywide's Other Representations ..................................................................31

    1. Allegations regarding the sufficiency of borrower income .......................31

    2. Allegations regarding the adverse selection of loans.................................32

    3. Allegations regarding the servicing of loans .............................................33

    4. Allegations regarding the documentation process used............................34

F. The Purported "Or Repurchase" Remedy, Unavailable to Allstate, Does Not Void Allstate's Legal Remedy for Defendants' Misrepresentations .............34

    1. The repurchase clause did not alter the nature of Defendants' representations and is fatally mismatched with Allstate's claims .............34

    2. Defendants' reading of the repurchase clause violates the anti-waiver provisions of federal and state laws ...............................................38

II. ALLSTATE'S FACTUAL ALLEGATIONS GIVE RISE TO A STRONG INFERENCE OF SCIENTER ...................................................................................39

A. The Numerous Allegations Regarding Countrywide's Scienter............................40

    1. Allegations regarding abandonment as the consciously-chosen tool to implement the top-down "matching" strategy .......................................40

        (a) Allegations regarding the Countrywide enterprise ........................40

        (b) Allegations regarding Mozilo ........................................................41

        (c) Allegations regarding Sambol........................................................42

2. Allegations regarding Countrywide's admissions that it was reckless..................................................................................44

3. Further allegations showing knowledge .....................................45

4. Allegations regarding the consistency of Countrywide's misrepresentations and poor loan performance ..........................46

5. Allegations regarding Defendants' motive and opportunity for fraud ............................................................................................46

B. The Most Compelling Inference From The Totality of Allstate's Allegations is That Defendants Acted With Scienter ............................48

C. Defendants' Targeted Attacks at Snippets of Allstate's Scienter Allegations Fail..........................................................................................49

1. Countrywide's admissions of guilt are not 'fraud by hindsight' ...............49

2. The consistency of the misrepresentations and the poor loan performance properly support the allegation of scienter ...........50

3. The Complaint shows high-ranking executives had scienter, and establishes corporate scienter....................................................51

4. Countrywide's size is not a liability shield................................52

5. General disclaimers do not negate the inference of scienter......53

6. The purported "or repurchase" clause does not defeat scienter................55

III. ALLSTATE WAS DAMAGED BY DEFENDANTS' MISREPRESENTATIONS.........55

A. The Higher Rates of Default Have Lowered the Certificates' Market Value........55

1. Allegations regarding the increased default rates caused by the misrepresentations.....................................................................55

2. Lowered market value is a cognizable injury ............................56

3. The market's liquidity status in 2007 does not mean the value is not now lower because of Defendants' wrongs ..........................59

4. The same conclusions hold for Allstate's 1934 Act and common-law claims ...................................................................................62

B. Disclaimers of Market Illiquidity are Irrelevant Because Allstate is Not Alleging it Was Harmed By an Illiquid Market......................................63

|   |   |   |   |
|---|---|---|---|
|   | C. | The Complaint Alleges Loss Causation Because Allstate Was Harmed By Defendants' Wrongs Separately From Changes in the Economy..........................64 |   |
|   |   | 1. Allegations putting Defendants on notice that the causal mechanism is the higher rate of defaults.....................................................65 |   |
|   |   | 2. Defendants have not met their burden of establishing negative causation as an affirmative defense to Allstate's 1933 Act claims............69 |   |
|   | D. | Allstate Relied on the Offering Materials................................................................70 |   |
| IV. | ALLSTATE'S AIDING AND ABETTING AND CONTROL-PERSON CLAIMS ARE SUPPORTED BY NUMEROUS FACTUAL ALLEGATIONS .............................72 |   |   |
|   | A. | Allstate's Aiding and Abetting Claims are Well-Pleaded .....................................72 |   |
|   |   | 1. Defendants' actual knowledge of the fraud ...............................................72 |   |
|   |   | (a) The Complaint sufficiently alleges knowledge given these defendants were the chief architects of the fraud..........................73 |   |
|   |   | (b) Alleging recklessness in the same Complaint is not fatal to the ability to establish actual knowledge for purposes of this count...................................................................................75 |   |
|   |   | 2. Defendants' substantial assistance in the fraud ........................................76 |   |
|   | B. | Allstate's Control-Person Claims are Well-Pleaded................................................77 |   |
|   |   | 1. These defendants, who headed the Countrywide enterprise, controlled the primary violators................................................................78 |   |
|   |   | 2. Defendants' "culpable participation" arguments fail................................81 |   |
|   |   | (a) Control-person liability does not require culpable participation .......................................................................................81 |   |
|   |   | (b) Allstate has adequately alleged culpable participation ..................83 |   |
| V. | ALLSTATE'S COMPLAINT IS THE RESULT OF A ROBUST INVESTIGATION USING NUMEROUS, PROPER SOURCES OF INFORMATION..................................................................................................................83 |   |   |
| VI. | ALLSTATE'S CLAIMS ARE TIMELY.........................................................................86 |   |   |
|   | A. | Allstate's 1934 Act Claims are Timely..................................................................87 |   |

| | | | |
|---|---|---|---|
| | 1. | The 1934 Act's limitations period does not run until a plaintiff could have discovered sufficient facts to meet its heightened pleading burden..........87 | |
| | 2. | Allstate could not have discovered sufficient facts to meet the heightened pleading standards prior to December 2008..........89 | |
| | 3. | The 1934 Act's statute of repose has not run for the great majority of these Offerings..........94 | |
| B. | Allstate's 1933 Act Claims Are Timely..........97 | | |
| | 1. | Under *American Pipe*, class members' claims are deemed filed as of the date of the class-action complaint..........97 | |
| | 2. | Allstate's claims were part of the timely-filed class actions..........99 | |
| | 3. | *American Pipe* applies because Allstate's federal claim is governed by a federal limitations period..........100 | |
| | 4. | A later determination that a named plaintiff lacked standing does not extinguish class members' ability to rely on *American Pipe*..........103 | |
| | | (a) | The Second Circuit holds that *American Pipe* applies for the period in which the claims were asserted..........104 |
| | | (b) | Retroactively disallowing claims would unfairly punish class members and cause an unnecessary future flood of duplicative suits..........105 |
| | | (c) | Numerous other courts have applied *American Pipe* despite later standing orders..........106 |
| | 5. | Allstate's claims are deemed filed as of the date of the class action complaints, and thus the statute of repose is no bar here..........108 | |
| | 6. | Defendants' remaining arguments regarding particular securities are similarly without merit..........110 | |
| VII. | THE MARTIN ACT DOES NOT BAR ALLSTATE'S NEGLIGENT MISREPRESENTATION CLAIMS..........112 | | |
| VIII. | THE DEPOSITOR DEFENDANTS ARE VALID SECTION 12 DEFENDANTS.......113 | | |
| IX. | BANK OF AMERICA IS COUNTRYWIDE'S SUCCESSOR..........115 | | |
| | A. | BofA is Liable Because of the *De Facto* Merger Doctrine..........116 | |

|   | 1. | All of the factors for determining whether a *de facto* merger has occurred have been sufficiently alleged..................................................116 |
|---|---|---|
|   | 2. | BofA's reliance on a purported additional pleading requirement from Delaware is misplaced...................................................................121 |
|   |   | (a) BofA's Delaware 'narrowing' cases are not discussing tort liability to third parties...............................................................121 |
|   |   | (b) New York law has a stronger interest in Allstate's claims..........124 |
| B. | The Complaint Sufficiently Alleges That BofA Assumed Countrywide's Liabilities .............................................................................................127 |

CONCLUSION........................................................................................................128

B. **The Complaint Sufficiently Alleges That BofA Assumed Countrywide's Liabilities**

The Complaint also sufficiently alleges that BofA impliedly and/or expressly assumed Countrywide's liabilities. Those allegations are sufficient to raise a claim for successor liability under the first of the four exceptions noted above. Though BofA goes outside the pleadings to challenge allegations regarding payments it made on Countrywide's behalf (Comp. ¶¶ 368-69), assumption of liabilities (just not, BofA claims, *these* liabilities) formed part of the "consideration" to which BofA repeatedly points. (*See* Rosenberg Dec. Ex. J at 8.01.) Further, the Complaint cites an article in which a BofA spokesperson expressly acknowledged that BofA had "bought all of [Countrywide's] assets *and liabilities*" and had factored in the "claims and potential claims" against the Company in making the purchase:

> Handling all this litigation won't be cheap, even for Bank of America, the soon-to-be largest mortgage lender in the country. Nevertheless, the banking giant says that Countrywide's legal expenses were not overlooked during negotiations. ***"We bought the company and all of its assets and liabilities,"*** *spokesman Scott Silvestri says.* ***"We are aware of the claims and potential claims against the company and have factored these into the purchase."***

(Comp. ¶ 359.) BofA purchased Countrywide for ***only 27%*** of its book value at the time, further suggesting that the claims and potential claims against the Company were considered in making the purchase. (*Id*.) Then-BofA CEO and Chairman Kenneth D. Lewis has stated that he was aware of the "issues within the housing and mortgage industries" and said that "the transaction [with Countrywide] reflects those challenges." (*Id.* ¶ 362.) Similarly, Mr. Lewis said: "We did extensive due diligence . . .We looked at every aspect of the deal, *from their assets to potential lawsuits* and we think we have a price that is a good price." (*Id.* ¶ 361.)

BofA argues that "mere fact" of assumption of some debts cannot prove that BofA intended to pay all of Countrywide's debts. (BofA Memo. at 8.) But the question is not at this stage whether the act of paying certain liabilities *per se* obligates BofA to pay for all of them. It

127

Exhibit C
Pg. 22

is whether Allstate's alleged sufficient facts to make plausible Allstate's claim that BofA did so as to this liability.[108] Indeed, BofA's insistence that it has carefully distinguished what liabilities it did and did not assume only further evidences the need for discovery on these matters, and emphasizes BofA's intent to use these transactions to unfairly disadvantage certain classes of creditors.

## CONCLUSION

For the reasons set forth above, this Court should deny the Defendants' motions to dismiss in their entirety.

DATED: New York, New York
May 9, 2011

QUINN EMANUEL URQUHART &
 SULLIVAN, LLP


By: /s/ Daniel L. Brockett
 Daniel L. Brockett
 Marc L. Greenwald
 David D. Burnett
 Matthew J. MacDonald
 51 Madison Avenue, 22nd Floor
 New York, New York 10010-1601
 Telephone: (212) 849-7000
 Fax: (212) 849-7100
 danbrockett@quinnemanuel.com
 marcgreenwald@quinnemanuel.com
 daveburnett@quinnemanuel.com
 mattmacdonald@quinnemanuel.com

 *Attorneys for Plaintiffs Allstate Insurance Company, Allstate Life Insurance Company, Allstate Life Insurance Company of New York, and American Heritage Life Insurance Company*

---

[108] BofA cites to *Fountain v. Colonial Chevrolet Co.*, No. 86C-JA-117, 1988 WL 40019, at *7-8 (Del. Super. Ct. Apr. 13, 1998), but that case was decided *on summary judgment*.