LINKS: 24, 26, 28, 33

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRIVENT FINANCIAL FOR LUTHERANS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTRYWIDE FINANCIAL CORPORATION, et al. <br><br> Defendants. | Case No. 2:11-cv-07154-MRP-MAN <br><br> **ORDER RE MOTIONS TO DISMISS THE COMPLAINT** |

## I. INTRODUCTION & BACKGROUND

This securities action concerns residential mortgage-backed securities ("RMBS") purchased by Thrivent Financial for Lutherans and related entities (collectively "Thrivent" or "Plaintiffs") in multiple offerings structured and sold by several of the defendants. On August 30, 2011, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the case to this Court to coordinate pre-trial proceedings with other Countrywide RMBS cases as part of MDL No. 2265. This case differs from Countrywide cases that the Court had previously considered in that it arises solely under state law. Specifically, Thrivent alleges that Countrywide Financial Corporation ("CFC"), several of its subsidiaries, Angelo Mozilo, and David Sambol committed various acts of fraud, fraudulent inducement, negligent misrepresentation, reckless misrepresentation, and aiding and abetting fraudulent and reckless misrepresentation. Thrivent further alleges that Bank of America and two of its subsidiaries are liable as Countrywide's successors.

This case involves twenty Countrywide RMBS Certificates[1] that Plaintiffs purchased between 2005 and 2007. ¶ 3. Plaintiffs allege that the Offering Documents for those Certificates contained a number of representations regarding the process by which the underlying loans in the RMBS were underwritten and the quality of the Certificates as investment vehicles. ¶ 4. Plaintiffs allege that those

---

[1] A Certificate is a document that shows ownership of a mortgage-backed security issued pursuant to a registration statement and prospectus supplement in a public offering. Each Certificate represents a particular tranche within an offering. Because "Certificate" refers to the document evidencing ownership of a specific tranche, the Court uses the terms "tranche" and "Certificate" somewhat interchangeably. An Offering refers to the process by which the Certificates were sold to Plaintiffs. The Offering Documents refer to the Registration Statements, Prospectuses and Prospectus Supplements, Term Sheets, and other written materials pursuant to which the Certificates were offered.

representations were false, that they relied on them, and that they suffered damages thereby. *Id.*

This case was initially filed in Minnesota state court. Defendants removed it to federal court, and the JPML subsequently transferred it here. Defendants had moved to dismiss the Complaint before transfer, but briefing had not been completed. Defendants renewed their motions before this Court, and the issues have now been fully briefed. As discussed below, the Court **DISMISSES** Causes of Action Four, Five, and Six. Causes of Action One, Two and Three are adequately pleaded except that the Court **DISMISSES** the transfer of title allegations. Dismissal is **WITHOUT PREJUDICE**.

## II.   MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiff's allegations, the complaint fails to state a claim for which relief can be granted. *See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

## III.   DISCUSSION

The JPML transferred this case from the District of Minnesota pursuant to 28 U.S.C. § 1407. ECF No. 121. The Court will therefore apply the substantive law, including choice-of-law rules, of Minnesota to Plaintiffs' claims. *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985). The parties agree

that Minnesota law governs the substantive fraud and misrepresentation claims. This Order is being released contemporaneously with an order in *Dexia Holdings Inc. v. Countrywide Fin. Corp.*, No. 2:11-cv-07165-MRP-Man, ECF No. 177 (*"Dexia"*). This case and *Dexia* involve the same defendants, same plaintiffs' counsel, and identical allegations of fraud.[2] The cases were argued together and share many legal issues. The Court reaches the same results here as it did in *Dexia*, and reaches those results for largely the same reasons. Rather than repeat its analysis, the Court will briefly address those areas where New York and Minnesota law diverge or where a party has raised a novel argument.

### A.  MOST OF THE FRAUD CLAIMS ARE ADEQUATELY PLEADED

The Court, in *Allstate Ins. Co. v. Countrywide Fin. Corp.* and again in the *Dexia* case, has held that similar allegations state a cause of action for New York common law fraud. *Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-05236, 2011 WL 5067128, at *15–19 (C.D. Cal. Oct. 21 2011) (*"Allstate I"*); *Dexia* Order; ECF No. 177, at 9–13. Defendants raise three arguments that the Court has not previously addressed. First, they argue that Plaintiffs have failed to plead pecuniary damages under Minnesota law. Second, they argue that Minnesota has adopted the federal standard for loss causation and that Plaintiffs have failed to plead any corrective disclosure. Finally, they argue that many of Plaintiffs' allegations are non-actionable opinions under Minnesota law. For the reasons discussed below, the Court disagrees with each of Defendants' contentions. The parties have not identified other areas of disagreement between New York and Minnesota law, and so the Court's *Dexia* and *Allstate I* analyses lead it to conclude that Plaintiffs' fraud allegations are largely adequately pleaded.

---

[2] *Dexia* also contains federal claims which are not at issue in this case.

*1. Plaintiffs have Alleged Pecuniary Damages*

Minnesota common law fraud requires that the plaintiff suffer "pecuniary" damages. *Zutz v. Case Corp.*, 422 F.3d 764, 770–71 (8th Cir. 2005). Defendants argue that Thrivent has not suffered any pecuniary damage because seventeen of the twenty Certificates that Thrivent purchased have continued to make all scheduled payments. CW Mot. at 32–33. Defendants read Minnesota law too narrowly. In a Minnesota fraud case, "damages are the difference between the actual value of the property received and the price paid for the property." *B.F. Goodrich Co. v. Mesabi Tire Co., Inc.*, 430 N.W.2d 180, 182 (Minn. 1988). Defendants themselves propose that "pecuniary" is defined as "consisting of money or that which can be valued in money." CW Reply at 5; *Skifstrom v. City of Coon Rapids*, 524 N.W.2d 294, 295 (Minn. Ct. App. 1994) (quoting Black's Law Dictionary 1131 (6th ed. 1990)). Plaintiffs have pleaded that the Certificates they purchased had a higher-than-advertised risk of default and the Certificates were therefore worth less than Thrivent paid for them. The purchase price and the Certificates' actual value are both capable of being valued in money. The fact that no ready market exists for the Certificates and that it will be difficult to quantify their actual value is a problem of proof, better resolved with a full factual record. The Court therefore **DENIES** Defendants' motion to dismiss for failure to plead pecuniary damages.

*2. Loss Causation*

Defendants argue that Minnesota law requires loss causation to be pleaded in a manner consistent with the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). Defendants principally rely on *Schaaf v. Residential Funding Corp.*[3] There, the District Court applied *Dura's* loss

---

[3] Defendants do cite another case, *In re St. Paul Travelers Sec. Litig. II*, No. 04-4697 (JRT/FLN), 2007 U.S. Dist. LEXIS 40326, at *6 (D. Minn. Jun. 1, 2007). That case involved federal securities claims and is therefore inapposite. *See In re*

causation requirements to a Minnesota fraud claim without any explanation or analysis as to why it was appropriate to do so. No. 05-1319 (JNE/SRN), 2006 WL 2506974, *15 (D. Minn. Aug. 29, 2006). The Eighth Circuit affirmed *Schaaf*, holding that *Dura* was simply an expression of common law proximate causation requirements in securities cases. 517 F.3d 544, 552–53 (8th Cir. 2008).

      The Court discusses this issue in Section II.E.3 of the *Dexia* order as well. As discussed in *Dexia*, the Supreme Court grounded its *Dura* decision in the centuries-old doctrine of proximate causation. *Dura*, 544 U.S. at 346 (requiring that a misrepresentation "proximately cause any economic loss."). Even if *Dura* does not explicitly apply to Plaintiff's state law claim, Plaintiff must still allege that Defendants' misrepresentations are the proximate cause of their loss. *Schaaf*, 517 F.3d at 552–53. As the Court discusses in *Dexia*, proximate cause has a different implication when applied to a liquid, efficient market than it does when applied to an illiquid security like the RMBS at issue in this case. In a liquid, efficient market, a security's price quickly and fully incorporates all material public information. Under such conditions, proximate cause can be determined by evaluating the market's reaction to a so-called corrective disclosure. Failure to plead a corrective disclosure and concomitant market reaction may therefore be fatal to a fraud claim involving an efficiently traded security. *Dura*, 544 U.S. at 347 ("The Complaint's failure to claim that Dura's share price fell significantly after the truth became known . . ." renders the complaint insufficient). Imposing such a rigid requirement for illiquid securities would effectively eliminate suits involving them. Where, as here, there is no easily determined market price, there is also no way to plead that the market responded to a corrective disclosure. The Court does not understand this to be the rule under either federal or Minnesota law.

---

*St. Paul Travelers Sec. Litig. II*, No. 04-4697 (JRT/FLN), 2006 U.S. Dist. LEXIS 70261, *3 (D. Minn. Sept. 25, 2006).

*Schaaf* is not to the contrary. There, the plaintiff purchased debentures of a homebuilder that was heavily reliant on two lenders for short-term funding. *Schaaf*, 517 F.3d at 547–48. The plaintiff relied on the two lenders' representations to the effect that the homebuilder was not presently in default on its obligations to them. *Id.* Those representations were false due to debt-to-equity covenants between the lenders and the homebuilder. *Id.* Six months later one lender declared the homebuilder in default and terminated its line of credit. Two years after that the other lender declared the homebuilder in default and foreclosed on its collateral. *Id.* Both defaults were unrelated to the debt-to-equity covenants, but rather brought on by the homebuilder's failure to comply with reporting requirements and pay debts as they came due. *Id.* Unable to obtain financing, the homebuilder declared bankruptcy, rendering the investors' debentures worthless. *Id.* The Eighth Circuit did not require a corrective disclosure and immediate price reaction. Rather, it analyzed the facts and found no causal nexus between the debt-to-equity ratio misrepresentations and the homebuilder's bankruptcy; both lenders had declared the builder in default for entirely unrelated reasons. *Id.* at 553.

Here, Plaintiffs alleged that the underlying loans were riskier than Defendants represented them to be. Both the resale value and the net present value of an RMBS are directly correlated to the risk profile of the underlying loan pool. Plaintiffs have alleged that their investments are now worth less than they paid for them. This is sufficient, at the pleading stage, to put Defendants "on notice . . . of what the relevant loss" is and "what the causal connection might be between that loss and the misrepresentation." *Dura*, 544 U.S. at 337. As in other cases, Defendants object that any decline in value was actually caused by the downturn in the housing market and the global financial crisis. That is a factual question better addressed on a more complete record.

3. **Statements of Opinion**

In the *Dexia* order, the Court declines to dismiss the claims that Defendants misrepresented LTV ratios, credit ratings, and other statements of opinion. The Court relies on its earlier determination that New York would follow the federal rule and permit a fraud action based on an opinion if the speaker did not subjectively believe in the opinion when uttered. *Allstate*, 2011 WL 5067128, at *16 (citing *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991)). Defendants argue that an opinion is not actionable under Minnesota law regardless of the speaker's subjective belief.

Minnesota law is clear that an opinion or projection of future results is not actionable. *Dollar Travel Agency, Inc. v. Nw. Airlines, Inc.*, 354 N.W.2d 880, 883 (Minn. App. 1984) ("Fraud must relate to past or existing fact and cannot be predicated on statements of intention or opinion."). New York law is the same; in *Allstate I*, the Court nevertheless found that a party's subjective belief in the accuracy of an opinion is a fact that might support a fraud claim.

No Minnesota court has conclusively answered the question, but a number of decisions lead the Court to conclude that a subjectively false statement of opinion is actionable under Minnesota law. A promise to do some action in the future is generally not actionable for the same reason that an opinion is not actionable. Nevertheless, Minnesota has acknowledged that such a promise may be actionable if the party did not intend to perform *at the time they made the promise*. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000); *Kramer v. Bruns*, 396 N.W.2d 627, 631 (Minn. App. 1986). Similarly, an opinion is actionable if it omits material present facts that would have put the opinion in context. *Berg v. Xerxes-Southdale Office Bldg. Co.*, 290 N.W.2d 612, 615 (Minn. 1980). In *Berg*, the Minnesota Supreme Court found that a prediction of future cash flows was actionable based on the fact that the defendant knew that the previous year had experienced negative cash flows. *Id.* In an older case, the

Minnesota Supreme Court found that a statement predicting that a flock of chickens would not become ill was actionable when the defendant had known of prior illnesses. *Hollerman v. F. H. Peavey & Co.*, 269 Minn. 221, 229 (Minn. 1964). As under New York law, the line between an opinion and a fact is highly dependant on context. Where an opinion purports to be based on facts, or where the opinion could not have been true based on facts known to the defendant, the opinion is actionable.

The Minnesota cases all turn on the question of whether an opinion is honestly held. If an opinion is not honestly held, Minnesota courts have held that the opinion is actionable as a misrepresentation. Absent any concrete decision to the contrary, the Court will therefore apply the rule that a statement of opinion may be actionable if the utterer believes the opinion to be false at the time of the statement. Having decided that the law is identical between Minnesota and New York, the Court declines to dismiss Plaintiffs' allegations relating to LTV ratios, ratings, and other matters of opinion for the same reasons set out in *Allstate I*. *Allstate I*, 2011 WL 5067128, at *16.

4.   *The Court Otherwise Adopts its Dexia and Allstate I Rulings*

The Complaint in this case is nearly identical to the complaint in *Dexia*. Both are very similar to the complaint that the Court examined in *Allstate I*. Except as discussed above, the Minnesota law of fraud, fraudulent inducement, and reckless misrepresentation parallels that of New York.[4] For the reasons stated in *Dexia*, *Allstate I*, and above, the Court finds Plaintiffs' allegations of fraud, fraudulent inducement, and reckless misrepresentation adequately pleaded with the

---

[4] *Dexia* and *Allstate I* did not include charges of reckless misrepresentation. The only difference between fraud and reckless misrepresentation under Minnesota law is the required state of mind. *Zutz v. Case Corp.*, 422 F.3d 764, 770–71 (8th Cir. 2005). Defendants have not identified any meaningful differences between the doctrines for purposes of this motion, and so the Court analyzes them together.

exception of the transfer of title allegations. As in *Dexia*, those allegations fail to identify a misstatement with sufficient particularity. *Dexia*, ECF No. 177, at 10–11. Defendants' arguments regarding falsity, adequate disclosure, materiality, and reliance are better addressed at the summary judgment stage. The Court therefore **GRANTS** Defendants' Motions to Dismiss Causes of Action One, Two, and Three with respect to the transfer of title allegations and otherwise **DENIES** Defendants' Motions to Dismiss Causes of Action One, Two, and Three. Dismissal is **WITHOUT PREJUDICE.**

### B. AIDING AND ABETTING

Plaintiffs allege that CFC, CHL, CSC, Countrywide Home Loans Servicing LP, CCM, the Depositor Defendants, Mozilo, and Sambol are liable to them for aiding and abetting the fraudulent misrepresentations discussed above. Minnesota, like New York, requires a plaintiff to show (i) a primary violation, (ii) actual knowledge of the primary violation, and (iii) substantial assistance. *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999). Substantial assistance must be pleaded with particularity, while actual knowledge may be alleged generally. *Allstate I*, 2011 WL 5067128, at *20. In *Dexia*, the Court dismissed the aiding and abetting claim on the grounds that the plaintiffs had not identified with particularity any acts constituting substantial assistance. ECF No. 177, at 13–14.

With respect to CFC, CHL, CSC, and the Depositor Defendants, the Court found that the plaintiffs had not separately identified those acts which constituted substantial assistance and those acts which constituted the primary violation. *Id.* With respect to the other aiding and abetting defendants, the Court held that the plaintiffs had not identified any acts which substantially assisted *the fraud alleged*. *Id.* The complaints are virtually identical, and the Court reaches the same result in this case.

Plaintiffs' allegations refer to false statements in Offering Documents. ¶¶ 202–25. Yet, they do not allege that the other aiding and abetting defendants—Countrywide Home Loans Servicing, Inc., CCM, Mozilo, or Sambol—assisted with creating or disseminating the Offering Documents. Rather, they allege that those defendants were involved in underwriting loans, setting underwriting standards, choosing which loans to securitize, failing to transfer title properly, and failing to properly service the Offerings. Opp. at 56. However, the touchstone of a fraud claim is not the underlying action but the misrepresentation of that action. Plaintiffs have not alleged with particularity that Countrywide Home Loans Servicing, Inc., CCM, Mozilo, or Sambol substantially participated in the creation of the Offering Documents or in the alleged misrepresentations therein. The Court therefore **DISMISSES** Cause of Action Four with respect to **ALL DEFENDANTS**. Dismissal is **WITHOUT PREJUDICE**.

### C.  NEGLIGENT MISREPRESENTATION

A claim for negligent misrepresentation only arises when the defendant owes the plaintiff a duty of care. *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 378 (Minn. 1989). Such a duty may exist when a party is "supplying information for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or employment." *Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn. 1986). Minnesota has followed other jurisdictions in holding that this requires something more than an arms-length business transaction between equals. *Safeco Ins. Co. of America v. Dain Bosworth Inc.*, 531 N.W.2d 867, 870–73 (Minn. Ct. App. 1995). Plaintiffs argue that they were not "equals" with Defendants for purposes of the RMBS purchase transactions, and that Defendants in any event had a "pecuniary" interest in the transactions. Opp. at 48–49.[5] Every party to a commercial

---

[5] Plaintiffs rely on one decision, *Cornerstone Home Builders, Inc. v. Guyers Dev., LLC*, No. A09-1178, 2010 WL 1541344, at *2 (Minn. Ct. App. 2010), to support

transaction has a pecuniary interest in that transaction. *Safeco* and other decisions have made clear that the "pecuniary interest" must be in the provision of information, not in a transaction generally. *Safeco*, 531 N.W.2d at 872. In other words, a party owes a duty not to speak negligently when it sells information or advice to a party. No duty arises when a party sells a good or service at arms length. *Id.* The fact that a selling party provides and analyzes information about a deal does not give rise to a duty. *Id.* at 872–73.

Defendants in this case were in the business of selling RMBS, not information or advice regarding RMBS. Plaintiffs allege that the Defendants had unique access to loan-level information and facts regarding compliance with underwriting standards. Opp. at 48. They argue that Defendants' possession of this information rendered the transactions unequal. *Id.* Plaintiffs confuse equality of knowledge with equality of bargaining power. Every side in every commercial transaction has private information; this alone cannot be enough to create a duty in tort.

Plaintiffs have failed to plead that Defendants were engaged in the business of selling advice on RMBS investments. Nor have they alleged any facts from which the Court could infer that the transaction was other than an arms-length business transaction between equals. The Court **DISMISSES** Cause of Action Five. Dismissal is **WITHOUT PREJUDICE**.

D.  **SUCCESSOR LIABILITY CLAIMS**

As above, the Court applies Minnesota law, including Minnesota choice-of-law rules. The parties disagree as to whether Minnesota or Delaware law governs the successor liability issues. Minnesota law requires the Court to first determine whether a true conflict exists. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000). This requires the Court to determine whether

---

their argument. *Cornerstone* is unpublished and non-precedential; the Court gives it no weight.

the choice of law question is "outcome determinative." *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 46–47 (Minn. 1978). The Court starts by noting that similar, though more detailed, claims were insufficient to state a *de facto* merger claim under Delaware law. *Allstate v. Countrywide Fin. Corp.*, No. 11-CV-05236 MRP (MANx), 2012 WL 335730, *11–14 (C.D. Cal. Feb. 2, 2012) ("*Allstate II*").

No published Minnesota decision specifies what factors a Minnesota court considers in *de facto* merger analysis. Unpublished decisions by both state courts and Minnesota district courts have considered the following factors: "(1) the continuity of management, personnel, physical location, assets, and general business operations; (2) the continuity of shareholders from the seller corporation to the purchasing corporation; (3) whether the purchased corporation ceases ordinary business operations, liquidates, or dissolves as soon as legally and practically possible; and (4) whether the purchasing corporation assumed the ordinary obligations of the seller for the continuation of normal business operations of the seller." *Source One Enter., L.L.C. v. CDC Acquisition Corp.*, No. Civ.02-4925(PAM/RLE), 2004 WL 1453529, *4 (D. Minn. June 24, 2004). Thrivent has pleaded facts supporting each of these factors. The Court therefore finds that the choice-of-law question is outcome determinative and that a true conflict exists. *See also Maine State Ret. Sys. v. Countrywide Fin. Corp*, No. 10-CV-0302 MRP (MANx), 2011 WL 1765509, at *4 (C.D. Cal. Apr. 20, 2011) (Conflict between California and Delaware law based on similar factors.) ("*Maine State II*").

Having found an actual conflict, the Court now applies Minnesota's "significant contacts" test to determine which law to apply. *Nodak*, 604 N.W.2d at 94. That test considers: "(1) Predictability of results; (2) Maintenance of interstate and international order; (3) Simplification of the judicial task; (4) Advancement of the forum's governmental interest; and (5) Application of the better rule of law." *Id.* Factors one, two, and three favor the application of Delaware law. An allegation of *de facto* merger goes squarely to the internal structure and

organization of a firm. However, as the MDL demonstrates, a tort claim that includes an allegation of *de facto* merger may arise in any state in which the defendant does business. Applying forum state law under these circumstances would result, on the same facts, in liability in some cases and not others. Such a result would decrease predictability, complicate the judicial task, disrespect the law of Countrywide's state of incorporation, and encourage forum shopping among plaintiffs. As in *Allstate I*, the Court notes that Minnesota has a plausible interest in applying its law to protect resident creditors. 2011 WL 5067128, at *4. The Court, like the Minnesota Supreme Court in *Nodak*, declines to reach the fifth factor. 604 N.W.2d, at 96 ("this court has not placed any emphasis on [the fifth] factor in nearly 20 years and conclude that it is likewise unnecessary to reach it here."). The first three factors outweigh any potential governmental interest that Minnesota has in applying its law. The Court will therefore apply Delaware law to Thrivent's *de facto* merger claim.

Thrivent has not introduced any fact that was not before the Court in *Maine State II*, *Allstate I*, or *Allstate II*. Applying the same test and legal reasoning, the Court therefore **DISMISSES** Cause of Action VI. Dismissal is **WITHOUT PREJUDICE**.

E.  **JURISDICTION**

Defendants Mozilo and Sambol have moved to dismiss the Complaint on the alternative ground that personal jurisdiction does not exist as to them in Minnesota. The Court has dismissed the two causes of action that implicate Mozilo and Sambol on alternative grounds. The Court therefore declines to reach the question of personal jurisdiction in this case.

IV.  **CONCLUSION**

For the reasons discussed above, the Court **DISMISSES** the transfer of title allegations in Causes of Action One, Two, and Three as inadequately pleaded. The Court **DISMISSES** Cause of Action Four for failure to plead substantial assistance

with particularity.  The Court **DISMISSES** Cause of Action Five for failure to plead that any defendant owed Plaintiffs a duty.  The Court **DISMISSES** Cause of Action Six for failure to plead a *de facto* merger.  Dismissal is **WITHOUT PREJUDICE** as to all Causes of Action.  Plaintiffs have leave to submit an amended complaint within 21 days of this Order.

**IT IS SO ORDERED.**

DATED: February 17, 2012          MARIANA R. PFAELZER
                                  _____
                                  Hon. Mariana R. Pfaelzer
                                  United States District Judge